UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
ST. LOUIS DIVISION

| | |
|---|---|
| RONALD LEES, on behalf of himself and others similarly situated, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| ANTHEM INSURANCE COMPANIES INC., d/b/a ANTHEM BLUE CROSS BLUE SHIELD, | ) ) ) |
| Defendant. | ) ) |

4:13-cv-01411-SNLJ

Judge Limbaugh

## PLAINTIFF'S MOTION FOR AWARD OF ATTORNEYS' FEES AND FOR SERVICE AWARD TO THE CLASS REPRESENTATIVE

The Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, prohibits making automated telephone calls to cellular telephones without the "prior express consent" of the recipient. This case alleges that Defendant Anthem Insurance Companies, Inc. d/b/a Anthem Blue Cross Blue Shield ("Anthem") made such calls to plaintiff and approximately 830,000 other consumers, nationwide. Anthem adamantly denies that it did anything wrong.

After protracted settlement discussions, including a full-day mediation with Hon. Layne Phillips (ret.), the parties reached a proposed class action settlement, which the Court preliminarily approved. (Dkt. Nos. 46, 49.) The settlement generally calls for a maximum Settlement Benefit of $6,250,000 and minimum Settlement Benefit of $4,750,000 for the Class.

Class Counsel respectfully request that the Court approve attorneys' fees and costs in the amount of $2,083,333.33, one-third of the settlement fund. The Eighth Circuit has expressly approved basing fees upon the potential recovery available to the Class, and this general basis for counsel's fee request was delineated in section IV.C of Plaintiff's Motion for Preliminary Approval, entitled, "The Requested Fees Are Reasonable." Moreover, the amount of fees sought

herein was clearly delineated in the notice mailed to the class members, as well as on www.AnthemTCPASettlement.com; as of the time of filing, no objections to this fee request have been received. This memorandum is also submitted in support of a $10,000 service award to the named plaintiff, Ronald Lees.

## I.    STANDARD OF REVIEW.

The Eighth Circuit has repeatedly endorsed the "percentage of the fund" method of determining attorney's fees in settlements like this one. *Johnston v. Comerica Mortg. Co.*, 83 F.3d 241, 244–46 (8th Cir.1996); *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1157 (8th Cir. 1999); *In re U.S. Bancorp Litigation*, 291 F.3d 1035, 1038 (8th Cir. 2002); see also *West v. PSS World Medical, Inc.,* 2014 WL 1648741 (E.D.Mo. April 24, 2014) (awarding 33% of amount available to class); *Ramsey v. Sprint Commc'ns Co.*, No. 4:11–CV–3211, 2012 WL 6018154, at *4 & n. 1 (D.Neb. Dec. 3, 2012) (approving 26% of gross fund because "[t]he available settlement funds are an appropriate measure of the benefit accrued by the class members, regardless of whether the full measure of that sum is actually claimed").

The "common fund" doctrine applies where, as here, litigation results in the recovery of a certain and calculable fund on behalf of a group of beneficiaries. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("[A] lawyer who recovers a common fund . . . is entitled to a reasonable attorney's fee from the fund as a whole[.]"); *Sutton v. Bernard*, 504 F.3d 688, 691 (7th Cir. 2007) ("Once a settlement has been reached in a class action, the attorneys for the class petition the court for compensation from the settlement or common fund created for the class's benefit.").

The Supreme Court has explained: "A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). While the Court must perform its own evaluation to verify

that the requested fees are not the product of collusion, it should give weight to the judgment of the parties and their counsel where, as here, the fees were agreed to through arm's length negotiations after the parties agreed on the other key deal terms. *See, e.g., Mangone v. First USA Bank,* 206 F.R.D. 222, 226 (S.D. Ill. 2001).

## II.     ARGUMENT.

### A.     The Court Should Apply the Percentage of the Fund Method.

"[T]here are advantages to utilizing the percentage method in common fund cases because of its relative simplicity of administration." *Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 566 (7th Cir. 1994). As one court in New York succinctly stated:

> The percentage method is bereft of largely judgmental and time-wasting computations of lodestars and multipliers. These latter computations, no matter how conscientious, often seem to take on the character of so much Mumbo Jumbo. They do not guarantee a more fair result or a more expeditious disposition of litigation.

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 170 (S.D.N.Y. 1989); see also *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 573 (7th Cir. 1992) (noting that it is easier to establish market based contingency fee percentages than to "hassle over every item or category of hours and expense and what multiple to fix and so forth"); *Gaskill v. Gordon*, 942 F. Supp. 382, 386 (N.D. Ill. 1996) ("[T]he percentage of fund method provides a more effective way of determining whether the hours expended were reasonable."), *aff'd*, 160 F.3d 361 (7th Cir. 1998).

Class Counsel's request for fees is reasonable because it represents the market price for the legal services provided. *See In re Ky. Grilled Chicken Coupon Mktg. & Sales Practices Litig.*, 2011 U.S. Dist. LEXIS 157910, at *18; *see also In re Cont'l Ill. Sec. Litig.*, 962 F.2d at 568, 572 ("It is not the function of judges in fee litigation to determine the equivalent of the

medieval just price . . ." and counsel is "entitled to the fee they would have received had they handled a similar suit on a contingent fee basis, with a similar outcome, for a paying client.").

Moreover, it makes *more* sense to apply the percentage of the fund method in TCPA cases than in other similar contexts, because of the tension between the fact that the TCPA is not fee-shifting, and the $500-$1,500 per violation damages provisions. 47 U.S.C. §227(b)(3). No rational client would pay any attorney's hourly rate for prosecuting a case like this, because the fees would exceed the maximum potential recovery before the complaint was filed. The market therefore demands that attorneys and clients agree upon fees as a percentage of the client's recovery; typically between one-third and 40%. The fee agreement between Class Counsel and Mr. Lees called for fees of one-third; the percentage sought from the class recovery is equal to this amount. (Burke Decl. ¶ 18.)

**B.      One-Third of the Common Fund is the Appropriate Rate for TCPA Cases.**

Courts, including the Eighth Circuit, have "recognized the appropriateness of relying on analogous class action settlements to determine the reasonableness of attorneys' fees." *In re Ky. Grilled Chicken Coupon Mktg. & Sales Practices Litig.*, 2011 U.S. Dist. LEXIS 157910, at *15 (citing *Taubenfeld v. AON Corp.*, 415 F.3d 597, 599 (7th Cir. 2005) (quotations omitted)).

Here, the requested fee of one-third of the total Settlement Amount is on par with attorneys' fees consistently awarded in similar TCPA class litigation. *Martin v. Dun & Bradstreet, Inc.*, No. 12-00215 (N.D. Ill. Jan. 16, 2014) (Dkt. No. 66 (awarding one-third fee payment of distributed fund); *Cummings v Sallie Mae*, No. 12-9984 (N.D. Ill. May 30, 2014) (Dkt. No. 91) (awarding one-third of the common fund for fees); *Hanley v. Fifth Third Bank*, No. 12-01612 (N.D. Ill. Dec. 23, 2013) (Dkt. No. 86) (awarding one-third of common fund); *Desai v. ADT Sec. Servs., Inc.*, No. 11-01925 (N.D. Ill. June 21, 2013) (Dkt. No. 243) (approving payment of one-third of common fund); *Paldo Sign & Display Co. v. Topsail Sportswear, Inc.*,

No. 08-05959 (N.D. Ill. Dec. 21, 2011 (Dkt. No. 116) (approving one-third of the settlement fund plus expenses); *CE Design Ltd. v. Cy's Crab House N., Inc.*, No. 07-05456 (N.D. Ill. Oct. 27, 2011) (Dkt. No. 424) (same); *Saf-T-Gard Int'l, Inc., v. Seiko Corp. of Am.*, No. 09-00776 (N.D. Ill. Jan. 14, 2011) (Dkt. No. 100) (same); *G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 07-05953 (N.D. Ill. Nov. 1, 2010) (Dkt. No. 146) (same); *Hinman v. M & M Rental Ctr., Inc.*, No. 06-01156 (N.D. Ill. Oct. 6, 2009) (Dkt. No. 225) (same); *Holtzman v. CCH*, No. 07-07033 (N.D. Ill. Sept. 30, 2009) (Dkt. No. 33) (same); *CE Design, Ltd. v. Exterior Sys., Inc.*, No. 07-00066 (N.D. Ill. Dec. 6, 2007) (Dkt. No. 39) (same). *Locklear Elec., Inc. v. Norma L. Lay*, No. 09-00531 (S.D. Ill. Sept. 8, 2010) (awarding 33% of the common fund plus costs); *Accounting Outsourcing, LLC v Verizon Wireless*, No. 03-161, 2007 WL 7087615, at *2 (M.D. La. Aug. 2, 2007) (awarding 36.5% of the $6,340,625 common fund plus costs). Although these cases were litigated and settled in jurisdictions other than the Eastern District of Missouri, they are compelling evidence of the appropriate rate that should be applied in this jurisdiction.

Class Counsel's request is also on par with the 33⅓% reasonable market price consistently awarded in other common fund, non-TCPA cases, as well. *See e.g. In re Plasma Derivative Protein Therapies Antitrust Litig.*, No. 09-07666, (N.D. Ill. Apr. 16, 2014) (awarding 33.3% of the $64 million settlement fund in Sherman Act case) (Dkt. No. 703); *Beesley v. Int'l Paper Co.,* No: 06-703, 2014 U.S. Dist. LEXIS 12037, at *7-10 (S.D. Ill. Jan. 31, 2014) (awarding $10,000,000 fee (and over $1.5 million in costs) constituting one-third of the total common fund); *City of Greenville v. Syngenta Crop Prot., Inc.*, 904 F. Supp. 2d 902, 908-09 (S.D. Ill. 2012) (approving one-third fee of over $32 million and noting that "the market price for fee awards is the amount of court-awarded attorneys' fees in comparable cases.") (citing *Taubenfeld,* 415 F.3d at 599); *George v. Kraft Foods Global, Inc.,* Nos. 08-3799, 07-1713, 2012

U.S. Dist. LEXIS 166816, at *8 (N.D. Ill. June 26, 2012) ("'[T]he normal rate of compensation in the market [is] 33.33% of the common fund recovered' because the class action market commands contingency fee agreements and the Class counsel accepts a substantial risk of nonpayment."); *McDaniel v. Qwest Commc'ns Corp.*, No. 05-1008, 2011 U.S. Dist. LEXIS 154591, at *11-12 (N.D. Ill. Aug. 29, 2011) ("As decisions of the Seventh Circuit have confirmed, the real-world market range for contingent fee cases is 33% to 40%."); *In re Ky. Grilled Chicken Coupon Mktg. & Sales Practices Litig.*, 2011 U.S. Dist. LEXIS 157910, at *18-19 (citing cases and finding a 32.7% common fund fee to be reasonable and within the market rate). As is the case here, these cases likewise use the percentage of the *total* fund, and do not, for example, deduct the costs of notice and administration from that total.

The percentage of the fund methodology is also the best approach to determining fees in a case like this because it aligns the interests of class counsel with the interests of the class.

Given these circumstances, the Court should give weight to the agreement of the parties and their counsel regarding reasonable fees as *prima facie* evidence of the market rate. *Stumpf v. PYOD, LLC*, No. 12-4688, 2013 WL 6123156, at *2 (N.D. Ill. Nov. 20, 2013) ("The named plaintiff's agreement to a floor of 33.33% of any net recovery supports the claim that 30% of the net recovery is tied to the market."); *see also Mangone,* 206 F.R.D. at 226 (requiring weight to the judgment of the parties and their counsel where, as here, the fees were agreed to through arm's length negotiations after the parties agreed on the other key deal terms). As shown above, the parties' private, arms-length negotiations have yielded a result fully consistent with the market for legal fees.

### C. One-Third of the Amount Available to the Class is Appropriate Here.

Prosecution of this action has involved significant risk. As noted above, Class Counsel prosecuted this matter on a purely contingent basis, agreeing to advance all necessary costs and

expenses, and knowing that there would only be a fee if there were a recovery. Although the case settled before it was necessary, Class Counsel was ready to advance the cost of, for example, expert witnesses on the issue of whether the equipment used to call plaintiff and the class was an "automatic telephone dialing system" under the TCPA. *See Scott v. Westlake Servs., LLC*, 740 F.3d 1124, 1127 (7th Cir. 2014). ("Whether a call is 'dialer-generated' within the meaning of the TCPA is a hotly contested issue on the merits.") (citation omitted). Class Counsel was also prepared to pay for any other costs associated with the litigation, such as class notice, depositions, and travel. Of course, had plaintiff not prevailed, no funds would have been recoverable from the class members, for whose benefit they were expended.

Moreover, there are several petitions pending before the Federal Communications Commission seeking to "clarify" that equipment much like that which was used to make the calls at issue in this litigation does not constitute an "automatic telephone dialing system" under the TCPA. Anthem filed a motion to stay these proceedings on January 16, 2014 (Dkt Nos 26 & 27), for this very reason. The FCC has not ruled on these petitions, but they played a substantial factor in the risk analysis made by Class Counsel before filing this case, and also in negotiations.

Absent settlement, Class Counsel would have faced fierce opposition from formidable defense counsel at class certification, particularly because courts are divided as to whether consent issues predominate over common questions in TCPA cases, depending on the circumstances of the case. Compare *Jamison v. First Credit Servs.*, 290 F.R.D. 92, 107 (N.D. Ill. 2013) (finding issues of consent to predominate in TCPA action), *with Saf-T-Gard Int'l v. Vanguard Energy Servs.*, No. 12-3671, 2012 WL 6106714, at *6 (N.D. Ill. Dec. 6, 2012) (certifying a class in a TCPA action and finding that no evidence supported the view that issues of consent would be individualized).

Further, at least some courts view awards of aggregate, statutory damages with skepticism and reduce such awards—even after a plaintiff has prevailed on the merits—on due process grounds. *See, e.g., Aliano v. Joe Caputo & Sons - Algonquin, Inc.*, No. 09-910, 2011 WL 1706061, at *4 (N.D. Ill. May 5, 2011) ("[T]he Court cannot fathom how the minimum statutory damages award for willful FACTA violations in this case — between $100 and $1,000 per violation — would not violate Defendant's due process rights . . . . Such an award, although authorized by statute, would be shocking, grossly excessive, and punitive in nature."); *but see Phillips Randolph Enters., LLC v. Rice Fields*, No. 06-4968, 2007 WL 129052, at *3 (N.D. Ill. Jan. 11, 2007) ("Contrary to [defendant's] implicit position, the Due Process clause of the 5th Amendment does not impose upon Congress an obligation to make illegal behavior affordable, particularly for multiple violations."). This settlement provides the members of the class with the opportunity to obviate all risk associated with all defenses, and allows them to recover substantial money with no need to prove their case in court.

Finally, there is the risk of losing a jury trial. And, even if plaintiff did prevail, any recovery could be delayed for many years by an appeal. Any potential statutory recovery in this case would likely be impossible to recover as a factual matter due in part to the fact that Anthem would have every incentive to litigate appeals of any such judgment as far as possible over many years. The settlement provides substantial relief to the class without further delay.

While Plaintiff is confident in the viability of his claims, success is by no means assured, and litigating these issues would have required significant additional expenditure of time, money, and resources for which Class Counsel would not be compensated should Plaintiff lose on summary judgment, fail to certify a class, or lose at trial. *See In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 792 F. Supp. 2d 1028 (N.D. Ill. 2011) (finding class counsel

incurred significant risk of nonpayment where, among other reasons, class counsel would have to overcome case dispositive defenses and certify a class); *see also Elkins v. Medco Health Solutions, Inc.*, No. 12-2141, 2014 WL 1663406, at *10 (E.D. Mo. Apr. 25, 2014) (granting summary judgment against Plaintiff in TCPA class case); *Jamison*, 290 F.R.D. at 102-09 (denying class certification in part because a class-wide determination of consent would require "a series of mini-trials"); *Greene v. DirecTV, Inc.*, No. 10-117, 2010 WL 4628734, at *5 (N.D. Ill. Nov. 8, 2010) (granting summary judgment against Plaintiff in TCPA class case).

In sum, the risk undertaken by Class Counsel, therefore, supports awarding the requested attorneys' fees. *See, e.g., Sutton*, 504 F.3d at 694 ("[T]here is generally some degree of risk that attorneys will receive no fee (or at least not the fee that reflects their efforts) when representing a class because their fee is linked to the success of the suit.... Because the district court failed to provide for the risk of loss, the possibility exists that Counsel, whose only source of a fee was a contingent one, was undercompensated.") (citation omitted).

By applying their skills and experience in consumer litigation generally, and particularly in TCPA and class action litigation, Class Counsel achieved an outstanding result in the face of a resolute defense. As discussed above, the Settlement affords the class an available settlement amount of $6,250,000, enabling Settlement Class Members to receive a *pro rata* share of the Distributable Settlement Fund of up to the $500 afforded under the TCPA, 47 U.S.C. § 227(b)(3).

The Settlement was reached after not only extensive factual investigation and discovery into the claims and issues relevant to this case, but also numerous arms-length negotiations, including formal mediation before an experienced third-party neutral. (Burke Decl. ¶ 16.) The settlement amount affords substantial monetary relief to the class, a direct result of the

dedication, skill, and experience of Class Counsel for which they should be fairly compensated. *See, e.g., Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 598 (N.D. Ill. 2011) ("[T]he quality of Class Counsel's performance in th[e] litigation favors approval of the fees requested. Class counsel have navigated a complicated case and have negotiated a Settlement Agreement that provides significant benefits to the Class Members."); *see also Redman v. RadioShack Corp.*, 768 F.3d 622, 633 (7th Cir. 2014) ("We have emphasized that in determining the reasonableness of the attorneys' fee agreed to in a proposed settlement, the central consideration is what class counsel achieved for the members of the class rather than how much effort class counsel invested in the litigation.").

Class Counsel have devoted significant time to investigating, litigating, and settling this case, and have made considerable outlays of time and money by, among other things, (1) investigating this action; (2) conducting legal research; (3) conducting discovery; (4) negotiating the settlement over several months, including by participating in an all-day mediation session and numerous other arms-length negotiations with defense counsel; (5) reviewing confirmatory discovery and data; and (6) responding to class member inquiries. Burke Decl. ¶16.

Overall, Class Counsel's efforts have been substantial, and the amount of work supports the requested fee. *See, e.g., In re Ready-Mixed Concrete Antitrust Litig.*, 2010 WL 3282591, at *2 (S.D. Ind. Aug. 17, 2010) (approving a one-third fee where, inter alia, counsel engaged in "the amount of work necessary to resolve the litigation").

The stakes of the action support the requested fee, too. This action involves approximately 830,000 class members to whom defendant allegedly made unlawful, autodialed calls to their cell phones. Had class members filed TCPA cases on their own, and prevailed, they would have been able to recover a minimum of $500 per violation. *Holtzman v. Turza*, 728 F.3d

682, 684 (7th Cir. 2013). Plaintiffs that can show that violations were willful may request treble damages. 47 U.S.C. §227(b)(3). But, of course, class members would have had to do a lot of work to obtain these results, and pay a lawyer, incur the $400 filing fee in federal court, potentially sit for a deposition or testify at trial, etc. This settlement provides class members with the opportunity to receive at least $36, without any work at all other than submitting a claim form by mail or online.

Those who wish to pursue such litigation can, of course, opt out of the settlement, and seven such individuals have decided to exclude themselves. In light of the high number of class members who likely would not have received *any* relief without the assistance of Class Counsel—and the meaningful amount recovered, expected to be in excess of $36 for each class member who submits a valid claim form—the settlement compares very favorably with the stakes of the case, and the requested fee is reasonable and should be awarded.

### D.     The Proposed Class Representative Award Is Reasonable.

Incentive awards compensate named plaintiffs for work done on behalf of the class by attempting to account for financial, personal, or reputational risks associated with litigation, and promote public policy goals by encouraging plaintiffs to step forward on behalf of unnamed class members. The requested incentive award of $10,000 for the class representative is well justified and supported by case law in this District.

In addition to lending his name to this matter, thereby subjecting himself to public attention, plaintiff was actively engaged in this action. Among other things, he: (1) provided information to Class Counsel for the Complaint and other filings; (2) reviewed pleadings and other documents; (3) communicated on a regular basis with Class Counsel and kept informed of progress in the litigation and settlement negotiations; and (4) approved the Settlement. Burke Decl. ¶18.

Given the total settlement amount available to the class, a $10,000 incentive award to plaintiff will have no significant impact on the amount each individual Settlement Class Member will receive after submitting a valid claim form under the settlement.

Further, the amount requested here, $10,000, is on par with or even less than incentive awards frequently approved by federal courts. *See, e.g., Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (upholding award of $25,000 to class representative); *In re Sw. Airlines Voucher Litig.*, No. 11-8176, 2013 WL 4510197, at *11 (N.D. Ill. Aug. 26, 2013) (awarding $15,000 each to two named plaintiffs); *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07-2898, 2012 WL 651727, at *16-17 (N.D. Ill. Feb. 28, 2012) (a $25,000 incentive award is a reasonable one); *Kraft Foods Global, Inc.*, 2012 U.S. Dist. LEXIS 166816, at *8 (awarding $15,000 each to four named plaintiffs). It is also in line with – and actually below – many of the service awards frequently awarded in TCPA cases.[1]

Accordingly, Class Counsel respectfully requests that the Court approve an incentive award of $10,000 to the class representative, Ronald Lees.

### III. CONCLUSION

For the foregoing reasons, Class Counsel respectfully requests that the Court grant this motion and award Class Counsel attorneys' fees and costs in the amount of $2,083,333.33, representing one-third of the total settlement amount available to the class. Class Counsel

---

[1] *See Benzion v. Vivint, Inc.*, No. 12-61826 (S.D. Fla.) (Dkt. No. 195) (tentatively approving $20,000 incentive award to named plaintiff); *Martin v. Dun & Bradstreet, Inc.*, No. 12-00215 (N.D. Ill. Jan. 16, 2014) (Martin, J.) (Dkt. No. 66) (awarding $20,000 incentive award to named plaintiff); *Hanley v. Fifth Third Bank*, No. 12-01612 (N.D. Ill. Dec. 23, 2013) (Castillo, J.) (Dkt. No. 86) (awarding named plaintiff a $25,000 incentive award); *Desai v. ADT Sec. Servs., Inc.*, No. 11-01925 (N.D. Ill. June 21, 2013) (Bucklo, J.) (Dkt. No. 243) (approving incentive awards of $30,000 each to two named plaintiffs); *CE Design Ltd. v. Cy's Crab House N., Inc.*, No. 07-05456 (N.D. Ill. Oct. 27, 2011) (Kennelly, J.) (Dkt. No. 424) ($25,000 incentive award).

further requests that the Court approve an incentive award of $10,000 to the class representative, Ronald Lees.

Respectfully submitted,

Dated:  December 24, 2014   /s/Larry P. Smith
Counsel for Plaintiff and the Class

Alexander H. Burke
BURKE LAW OFFICES, LLC
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
(312) 729-5288
(312) 729-5289 (fax)
aburke@burkelawllc.com

Larry P. Smith
David M. Marco
SmithMarco, P.C.
205 North Michigan Avenue, Suite 2940
Chicago, IL 60601
(312) 222-9028
(888) 418-1277 (fax)
lsmith@smithmarco.com
dmarco@smithmarco.com
www.SmithMarco.com
*Counsel for Plaintiff and the Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 24, 2014, I electronically filed the foregoing document with the Clerk of the Court, using the CM/ECF system, which will send a notice of electronic filing to all counsel of record:

                                                            /s/ Larry P. Smith