RECEIVED
DEC 23 2014
BY MAIL

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
ST. LOUIS DIVISION

| | |
|---|---|
| RONALD LEES, on behalf of Himself and other similarly situated,<br><br>                Plaintiff,<br><br>v.<br><br>ANTHEM INSURANCE COMPANIES INC., d/b/a ANTHEM BLUE CROSS BLUE SHIELD,<br><br>                Defendant. | Case No. 4:13-cv-01411-SNLJ<br><br>OBJECTION TO PROPOSED SETTLEMENT AND NOTICE OF INTENT TO APPEAR<br><br>Date:   April 1, 2015<br>Time:  1:30 p.m.<br><br>Hon. Stephen N. Limbaugh, Jr. |

### NOTICE OF INTENT TO APPEAR AND ARGUE

TO THE COURT, ALL PARTIES AND THEIR COUNSEL OF RECORD:

**PLEASE TAKE NOTICE** that on April 1, 2015, at 1:30 p.m., or as soon thereafter as the matter can be heard in the above-entitled court located at 111 South 10th Street, St. Louis, MO 63102, class member Glenn Kassiotis ("Objector" or "Kassiotis"), by and through his undersigned counsel, intends to appear and offer argument at the final approval hearing.

### I. INTRODUCTION

Class action settlements, unlike typical settlements, require court approval for the protection of those class members whose rights may not have been given due regard by

the negotiating parties. Fed. R. Civ. P. 23(e)(1)(A). A district court must find that the settlement is fair, adequate and reasonable and is not the product of collusion between the parties. *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1146 (8th Cir. 1999). In evaluating settlement proposals, the Court should weigh "the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement." *Id.* at 1150.

The burden of proving the fairness of a settlement rests squarely on its proponents. *See, e.g., Holmes v. Continental Can Co.*, 706 F.2d 1144, 1147 (11th Cir. 1983). *See* Herbert B. Newberg & Alba Conte, 2 Newberg on Class Actions § 11.42 (3d ed. 1992); Moore's Federal Practice § 23.80 [4] (2d ed. 1987); *see also Williams v. Ryan,* 78 F.R.D. 364, 369 (1978). While a high degree of precision cannot be expected in valuing a litigation, the court should nevertheless "insist that the parties present evidence that would enable possible outcomes to be estimated," so that the court can at least come up with a "ballpark valuation." *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006), citing *Reynolds v. Benefit Nat'l Bank*, 288 F.3d 277, 285 (7th Cir. 2002). The settling parties have failed to meet this burden.

## II. THE RELIEF OFFERED IS INADEUQATE IN LIGHT OF AVAILABLE STATUTORY DAMAGES AND TREATS CLASS MEMBERS DISPROPORTIONATELY

Unfairly disparate treatment of class members runs contrary to Fed. R. Civ. P. 23. *Petrovic*, 200 F.3d at 1152. Under the proposed settlement agreement, "Each Settlement Class Member who submits a Valid Claim Form shall be entitled to a *pro rata* share of the Settlement Benefits (the "per-Settlement Class Member Benefit"). ***A Settlement Class member may submit one, and only one Valid Claim Form for each of his/her/its***

2

*unique cellular phone numbers called by* Alta *regardless of the times a unique cellular phone number was called.*"[1] [emphasis added]

However, the Telephone Consumer Privacy Act ("TCPA" or "Act") provides for recovery of actual monetary loss from violation of the Act, or $500 in damages *for each violation*, whichever is greater. 47 U.S.C. 227(a)(3)(B). Additionally, the Act provides that if the Court finds that the defendant(s) knowingly violated the statute, the Court may, in its discretion, award up to three times the aforementioned damages. 47 U.S.C. 227(a)(3). Accordingly, the statutory measure of damages in this case is $500 - $1500 *per call*. Nevertheless, class members are entitled to claim only once for each unique telephone number regardless of the number of times called. The result is class members with the greatest damages receiving the smallest share of the common fund in proportion to the harm suffered.

### III. CLASS MEMBERS LACK SUFFICIENT INFORMATION TO DETERMINE THE SETTLEMENT'S VALUE AND, ACCORDINGLY, WHETHER TO PARTICIPATE IN THE SETTLEMENT, OPT-OUT, OR OBJECT

The settling parties have not provided the class size. As a result, class members are unable to calculate a range of outcomes based on the number of claims submitted. The settling parties have presented no evidence that class members will receive value under the settlement commensurate with the value of their underlying claims. *See* C. Wright, A. Miller, & M. Kane, Federal Practice & Procedure § 1797.1, at 392 (1986) (settling parties must offer evidence to demonstrate fairness and adequacy of settlement).

---

[1] Settlement Agreement, Doc.45-1 at ECF 12

*See also, Synfuel Techs., supra,* 463 F.3d at 653. Information provided to the class members in the notice must be structured "in a manner that enables class members rationally to decide whether they should intervene in the settlement proceedings or otherwise make their views known." *Reynolds v. National Football League*, 584 F.2d 280, 285 (8th Cir. 1978). The parties have provided no such evidence, and Objector reserves his right to comment further on any such evidence submitted later in support of final approval.

## IV. THE RESULTS OBTAINED IN THIS LAWSUIT DO NOT WARRANT A SUBSTANTIAL FEE AWARD

As a threshold matter, there is no provision for class members to comment on Class Counsel's fee because the deadline to object (December 27, 2014) precedes the deadline for Plaintiff's Motion for Attorneys' Fees (March 18, 2015). (Doc. 46, ¶¶ 15, 18). Consequently, class members are unable to evaluate the additional evidence and arguments to be submitted in support of the settlement and attorneys' fee request, which hampers their ability to analyze them, and requires class members to predict what additional evidence may later be proffered in support of the settlement where, at the time of the objection, none exists.

Any objection deadline should provide the eligible parties with an adequate opportunity to review all of the materials that may have been submitted in support of the motion and, in an appropriate case, conduct discovery concerning the fees request. *See* 5 Moore's Federal Practice § 23.124[4] (Matthew Bender 3d ed. 2009), quoted in *Mercury Interactive Corp. Sec's Litig.*, 618 F.3d 988, 994 (2010), which commented:

> Allowing class members an opportunity thoroughly to examine counsel's fee motion...is essential for the protection of the rights of class members. It also ensures that the district court, acting as a fiduciary for the class, is presented with adequate, and adequately-tested, information to evaluate the reasonableness of a proposed fee.

*Mercury Interactive*, 618 F.3d at 994.

Notwithstanding the absence of Plaintiff Ronald Lees's ("Plaintiff" or "Lees") fee motion at the time of this writing, the class relief appears inadequate in light of class counsel's requested fee. Defendant agreed to pay counsel $2,083,333.33[2]. This is striking in that it represents over 43% of the $4,750,000 common fund created for the benefit of the class. See Settlement Agreement, Doc. 45-1 at ECF 11-12, ¶ G.[3] Moreover, the $4,750,000 represents the gross fund prior to deduction of settlement administration costs, or attorneys' fees and costs. "Administrative costs should not have been included in calculating the division of the spoils between class counsel and class members. Those costs are part of the settlement but not part of the value received from the settlement by the members of the class." *Redman v. RadioShack Corp.*, 768 F.3d 622, 630 (7th Cir. 2014).

Finally, the Court should disregard or deeply discount the value of Anthem's "taking reasonable steps to minimize the likelihood of lawsuits such as this one in the

---

[2] Settlement Agreement, Doc. 45-1 at ECF 15, ¶ I

[3] Objector recognizes that $4.75 million is the minimum Defendant is required to provide for the common fund, and that the Settlement Agreement requires an additional $1.5 million if *pro rata* class benefits are less than $36. However, the settling parties have provided no evidence of probability that individual member benefits will exceed $36, thereby making a *bona fide* percentage of recovery analysis impossible beyond the $4,750,000 floor.

future"[4] in determining any award of attorneys' fees, as the value of such steps is not ascertainable. *See, e.g., Pearson v. NBTY, Inc.*, Nos. 14-1198 et al., slip op. at 15 (7th Cir. 2014).

The amount of requested attorneys' fees is an important factor in assessing the reasonableness of the class relief, since every dollar that goes to class counsel is a dollar less that is available to compensate class members. *See, e.g., Apple Computer v. Superior Court,* 126 Cal. App. 4th 1253, 1269 (2005) ("Although under the terms of [a] settlement agreement, attorneys' fees technically derive from the defendant rather than out of the class recovery, in essence the entire settlement amount comes from the same source."). The award to the class and the agreement on attorneys' fees represent a package deal. Even if the fees are paid directly to the attorneys, those fees are still best viewed as an aspect of the class recovery. *Redman v. RadioShack Corp.*, 768 F.3d at 630.

"The defendant cares only about the size of the settlement, not how it is divided between attorneys' fees and compensation for the class." *Eubank v. Pella Corp.*, 753 F.3d 718, 720 (7th Cir. 2014). Accordingly, class counsel is incentivized, in complicity with the defendant's counsel, "to sell out the class by agreeing with the defendant to recommend that the judges approve a settlement involving a meager recovery for the class but generous compensation for the lawyers - the deal that promotes the self-interest of both class counsel and the defendant and is therefore optimal from the standpoint of their private interests." *Id.*, quoting *Creative Montessori Learning Centers v. Ashford Gear LLC*, 662 F.3d 913, 918 (7th Cir. 2011), citing other opinions, in numerous circuits,

---

[4] Notice to Class Members at 3, ¶ 6; see also Settlement Agreement, Doc. 45-1 at 11, ¶ F.

recognizing the conflict of interest; *see also Redman, supra*, 768 F.3d at 629.

The parties' agreed-upon fee raises even greater suspicions about the adequacy of the class relief than in a typical settlement. First, the parties' negotiation of a "clear sailing" provision for fees whereby the defendant agrees not to challenge class counsel's fee request[5] triggers heightened scrutiny of the settlement's fairness because of the risk that class counsel may have bargained away valuable relief for the class "in exchange for red carpet treatment on fees." *Duhaime v. John Hancock Mutual Life Ins. Co.*, 183 F.3d 1, 4 (1st Cir., 1999) quoting *Weinberger v. Great N. Nekoosa Corp.*, 925 F.2d 518, 524-25 (1st Cir. 1991).

Additionally, the proposed attorneys' fee is largely distinct from the class relief, which decouples class counsel's interest from that of the class. Because counsel are to be paid $2,083,333.33 regardless of whether class members actually submit claims, class counsel only have an incentive to create an appearance of valuable relief, so as to justify their fee.

Even though fee awards must provide sufficient incentive for competent counsel to undertake class action litigation, "there also must be recognition that an element of public service is involved and that the opportunity to represent the class plaintiffs is judicially determined." *See, e.g., In re Equity Funding Corp. Sec. Litig.*, 438 F. Supp. 1303, 1327 (C.D. Cal. 1977). Objector requests that the Court carefully consider the amount of attorneys' fees and expenses requested by class counsel.

---

[5] Settlement Agreement, Doc. 92-1 at ECF 6, ¶ 13

## V. THE INTERESTS OF THE LEAD PLAINTIFFS ARE NOT ALIGNED WITH THOSE OF ABSENT CLASS MEMBERS IN LIGHT OF THE EXCESSIVE "INCENTIVE" PAYMENT

Plaintiff seeks an "incentive award" of $10,000.[6] While it may be appropriate in certain circumstances to provide an incentive award to lead plaintiffs, such awards are generally modest in both frequency and amount. A study of 374 opinions from 1993 to 2002 found that awards were granted in about 28% of settled class actions. The average incentive award was 0.16% of the class recovery, with a median of 0.02%.[7]

"[I]f class representatives expect routinely to receive special awards in addition to their share of the recovery, they may be tempted to accept suboptimal settlements at the expense of the class members whose interests they are appointed to guard." *Weseley v. Spear, Leeds & Kellogg*, 711 F. Supp. 713, 720 (E.D.N.Y. 1989); *see also Women's Comm. for Equal Employment Opportunity v. Nat'l Broad. Co.*, 76 F.R.D. 173, 180 (S.D.N.Y. 1977) ("[W]hen representative plaintiffs make what amounts to a separate peace with defendants, grave problems of collusion are raised.").

## VI. FUNDS EARMARKED FOR *CY PRES* DISTRIBUTION SHOULD INSTEAD GO TO THE CLASS

If the number of claim forms submitted results in the benefit per class member exceeding $500, the benefit shall be capped at $500 with the remainder of the fund distributed to a *cy pres* recipient. Doc. 45-1 at ECF 12, ¶ 2(b). The settling parties have

---

[6] Settlement Agreement, Doc. 45-1 at ECF 14-15

[7] Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study*, New York University Law and Economics Working Papers (2005).

8

proposed the Community Health Charities as the sole *cy pres* recipient. According to the organization's website, its mission is to "unite caring donors in the workplace with our nation's most trusted health charities" and "improve the lives of people affected by disability or chronic disease."[8]

First, there is no reason to distribute funds to a *cy pres* recipient when there exists a group of identifiable class members. As Judge Posner points out in *Pearson, supra* at 11, "A cy pres award is supposed to be limited to money that can't feasibly be awarded to the intended beneficiaries, here consisting of the class members." Here, it is not infeasible to distribute the entire common fund to class members who timely submit claims.

Second, there is no nexus between the nature of harm underlying the complaint and the mission of the *cy pres* recipient. While "improving the lives of people affected by disease" is unquestionably a noble goal, it has nothing to do with violation of the Telephone Consumer Protection Act. Even if a *cy pres* distribution were appropriate in this case, any *cy pres* recipient would appropriately be engaged in the business of addressing consumer privacy concerns. *In re Airline Ticket Com'n Antitrust Litig.*, 307 F.3d 679, 683-684 (8th Cir. 2002); *see also Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir., 2012).

---

[8] http://www.healthcharities.org/ABOUT-US

## VII. CONCLUSION

For the foregoing reasons, Objector respectfully requests that the Court deny approval of the settlement agreement as proposed.

DATED: December 22, 2014

Respectfully submitted,

John W. Davis (*pro hac vice* pending)
Law Office of John W. Davis
501 W. Broadway, Suite 800
San Diego, CA 92101
Telephone: (619) 400-4870
Facsimile: (619) 342-7170
john@johnwdavis.com

Counsel for Objector Glenn Kassiotis