**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
ST. LOUIS DIVISION**

| | | |
|---|---|---|
| RONALD LEES, on behalf of himself and others similarly situated, | ) | Case No. 4:13-cv-01411 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ANTHEM INSURANCE COMPANIES INC., d/b/a ANTHEM BLUE CROSS BLUE SHIELD, | ) | Hon. Judge Stephen N. Limbaugh, Jr. |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S MOTION AND INCORPORATED MEMORANDUM
IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiff Ronald Lees respectfully submits this memorandum in support of final approval of the Settlement reached in this class action.  For the reasons set forth herein and in the papers previously submitted, the Settlement is fair, adequate, and reasonable, and is in the best interests of the Settlement Class.  Accordingly, Plaintiff respectfully requests that the Court grant final approval to the Settlement by: (1) approving the proposed Settlement as fair, adequate, and reasonable for the certified Settlement Class; (2) determining that adequate notice was provided to the Settlement Class; (3) granting the requested attorneys' fees, costs, and incentive award; and (4) entering the proposed Final Judgment and Order of Dismissal attached as Exhibit B to the Settlement Agreement (the "Agreement").

If the Court approves the Settlement, Settlement Class Members who submitted Valid Claim Forms will receive an estimated $200 each, well within the range of reasonableness compared to other class actions under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(3). For the reasons stated herein, the Court should grant final approval of this Settlement.

1

## I.      FINAL APPROVAL SHOULD BE GRANTED.

When faced with a motion for final approval of a class action settlement under Rule 23, "[a] district court may approve a class action settlement only after determining that it is 'fair, reasonable, and adequate.'"  *In re Uponor, Inc., F1807 Plumbing Fittings Products Liab. Litig.*, 716 F.3d 1057, 1063 (8th Cir. 2013) (quoting Fed. R. Civ. P. 23(e)(2)).  A settlement is fair, adequate, and reasonable, and merits final approval, when "the interests of the class as a whole are better served by the settlement than by further litigation."  *Manual for Complex Litig. (4th)* ("*MCL 4th*") § 21.61, at 480 (2010).  "A settlement agreement is 'presumptively valid.'"  *In re Uponor, Inc., F1807 Plumbing Fittings Products Liab. Litig.*, 716 F.3d at 1063 (quoting *Little Rock Sch. Dist. v. Pulaski Cnty. Special Sch. Dist. No. 1*, 921 F.2d 1371, 1391 (8th Cir. 1990)).

### A.      The Settlement Is the Result of Informed, Arm's Length Negotiations.

A proposed class settlement is presumptively fair where it "is the product of arm's length negotiations, sufficient discovery has been taken to allow the parties and the court to act intelligently, and counsel involved are competent and experienced."  H. Newberg & A. Conte, *Newberg on Class Actions* ("*Newberg*") § 11:41 (4th ed. 2002); *see also In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002).  The Settlement here satisfies this test.

To reach this Settlement, the Parties engaged in extensive arm's-length negotiations, which included an all-day, in-person mediation with the Honorable Layn R. Phillips (Ret.) and numerous subsequent informal negotiations between counsel for the Parties via telephone and e-mail.  (DE 45, Mot. Prelim. App. Mem., p. 3.)  The Class representative, Ronald Lees, has remained involved throughout this litigation, from assisting in pre-filing investigation, the drafting of the complaint, and discovery, to keeping informed of and actively participating in the settlement negotiation process.  (DE 50, Pl.'s Mot. Fees and Service Award, p. 11.)

The Parties' settlement discussions, which included an exchange of documents and information, culminated in an Agreement that provides substantial relief to the Settlement Class. Under the Settlement, Defendant Anthem Insurance Companies Inc. ("Anthem") has agreed to pay a minimum of $4,750,000, and up to $6,250,000, into a Settlement Fund from which each Settlement Class Member who submitted a Valid Claim Form will receive a *pro rata* share of up to $500, after payment of any Settlement Administration Costs, Class Counsel's attorneys' fees and costs, and any approved service award to Plaintiff for serving as representative of the Settlement Class. The Settlement Fund would increase to up to $6,250,000 to the extent the *pro rata* share of per-Settlement Class Member Benefits would be less than $36.00.  (Agreement ("Agr.") ¶¶ III.G.1-2.)  Although there was $6,250,000 available to the class, because of the number of claims, Anthem's payout in this settlement will be $4,750,000, and each claimant will receive more than $200.

The Settlement is the result of a thorough investigation by the Parties.  Plaintiff demanded and received information relating to, *inter alia*, Anthem's calling practices, call records, and dialer equipment, as well as information permitting the identification of the Settlement Class—information crucial for Plaintiff to evaluate class-wide damages.  (Burke Decl. ¶ 12, attached as **Exhibit A**).  This information permitted Plaintiff to effectively negotiate on behalf of the Settlement Class, and ultimately achieve the exemplary Settlement for which approval is now sought.  (*Id.*)  For these reasons, the Settlement is entitled to a presumption of fairness.

### B.    Class Members Received the Best Notice Practicable.

This Court has already determined that the Notice Program in this case meets the requirements of due process and applicable law, provides the best notice practicable under the

circumstances, and constitutes due and sufficient notice to all individuals entitled thereto.  (DE 46 ¶ 7.) This Notice Program has been fully implemented by independent Claims Administrator Kurtzman Carson Consultants LLC ("KCC"). (Cooper Decl. ¶¶ 2-20, attached as **Exhibit B**).

For the 830,953 unique cellular phone numbers identifiable with the Settlement Class, KCC's review of Anthem's records and performance of a reverse lookup yielded 1,029,790 names and addresses associated with those unique cellular telephone numbers. (*Id.* ¶ 5.) After processing the data to ensure adequate formatting, KCC ran it against the National Change of Address database for increased accuracy. (*Id.* ¶ 6.) KCC then mailed the Mail Notice containing a summary of the Settlement to each of the 1,029,790 identified addresses associated with the Settlement Class. (*Id.* ¶ 9.) Mailings that were returned undeliverable were sent to any forwarding address. (*Id.* ¶ 12.) Although 56,730 records were ultimately determined to have an undeliverable address, the individual notice effort alone is estimated to have reached approximately 94.5% of the Settlement Class. (*Id.* at 13.) KCC also created the Website Notice website containing the Website Notice, Agreement, Preliminary Approval Order (DE 46), Order Amending Preliminary Approval Order (DE 49), and Plaintiff's Motion for Award of Attorneys' Fees and for Service Award to the Class Representative (DE 50), as well as other information relevant to the Settlement. (*Id.* ¶ 8; *see also* https://www.anthemtcpasettlement.com/Home.aspx.) Settlement Class Members were able to submit Claim Forms directly through the Website Notice website. (*Id.* ¶ 8.) KCC also effectuated Publication Notice, consisting of extensive online banner ads linking to the Website Notice website, with over 12 million online impressions supplementing direct notice efforts. (*Id.* ¶ 10-11.)

The Mail Notice mailed to the Class Members informed them of, among other things: (1) information about the Action, the Settlement, and the release; (2) deadlines for Settlement Class

Members to file a Claim Form, opt out of the Settlement, or object to the Settlement; (3) the amount being sought by Class Counsel in attorneys' fees and costs, and the proposed incentive award for Plaintiff; and (4) the date and location of the Final Approval Hearing.  Additionally, Anthem used KCC to provide notice of the Settlement to all appropriate federal and state officials, pursuant to the Class Action Fairness Act of 2005, *see* 28 U.S.C. § 1715(a)(2). (Cooper Decl. ¶¶ 3-4.)

KCC received a total of 8,139 Valid Claim Forms by the claims deadline of January 11, 2015.  (*Id.* ¶ 17.)  An additional 233 Claim Forms would be otherwise valid if they had been timely submitted, and an additional 13 would be otherwise valid if they had been signed.[1]  (*Id.*) This fits within the range of reasonableness for a class action settlement, including under the TCPA.[2]  Thus, the Notice Program approved by this Court and implemented by KCC has successfully provided notice of these proceedings and of the matters set forth therein, including the Agreement, to all parties entitled to such notice, and satisfied the requirements of Fed. R. Civ. P. 23 and due process.

### C.     The Settlement Satisfies the Criteria for Final Approval.

In assessing the fairness, reasonableness, and adequacy of a settlement, courts view the facts in the light most favorable to the settlement. *Isby v. Bayh*, 75 F.3d 1191, 1199 (7th Cir.

---

[1]     While Plaintiff takes no position on the matter, it is at the Court's discretion as to whether these 246 untimely or unsigned, but otherwise valid, Claim Forms should be treated as Valid Claim Forms permitting such Settlement Class Members to receive monetary Settlement Benefits.

[2]     *See, e.g., Adams v. AllianceOne Receivables Mgmt., Inc.*, No. 08-00248, Dkt. 109 at 5, 8; 113 (S.D. Cal. 2008) (expected claims rate in TCPA class action of less than 1%, with expected maximum recovery of $40); *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1377 (S.D. Fla. 2007) (approving consumer class action settlement where approximately 1.2% of class submitted claims); *Fraley v. Facebook, Inc.*, 966 F. Supp. 2d 939, 940 (N.D. Cal. 2013), *appeal dismissed* (Dec. 3, 2013) (approving consumer class action settlement where approximately 0.41% of class submitted claims, see Dkt. 352 at 1).

5

1996); *Spencer v. Comserv Corp.*, No. 84-794, 1986 WL 15155, at *5 (D. Minn. Dec. 30, 1986). "Although a trial court must consider the terms of a class action settlement to the extent necessary to protect the interests of the class, judges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel." *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148-49 (8th Cir. 1999) (citation and quotations omitted).

To evaluate fairness, courts consider the following factors: "(1) the merits of the plaintiff's case, weighed against the terms of the settlement; (2) the defendant's financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement." *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 932 (8th Cir. 2005) (citing *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 124 (8th Cir. 1975)). Courts also consider the opinion of competent counsel, discovery and the stage of proceedings, and the existence of evidence, if any, suggesting that the settlement is the product of fraud or collusion. *White v. Nat'l Football League*, 822 F. Supp. 1389, 1417 (D. Minn. 1993) (citations omitted). However, "[t]he most important consideration in deciding whether a settlement is fair, reasonable, and adequate is 'the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement.'" *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d at 933 (quoting *Petrovic*, 200 F.3d at 1150).

Applied to this case, the relevant criteria support final approval of the Settlement.

### 1.    The Strength of Plaintiff's Case Compared to the Amount of the Settlement.

Under the Settlement, Settlement Class Members avoid all of the risks and obstacles to recovery and will receive substantial benefits, in a timely fashion.  Plaintiff and Class Counsel have negotiated an excellent settlement for the Settlement Class under which Anthem committed to put in place processes to reduce the chance in the future that cellular telephone owners may

receive a call made on Anthem's behalf from an automatic telephone dialing system without prior consent and pay $4,750,000  into a Settlement Fund enabling each Class Member who submitted a Valid Claim Form to receive a *pro rata* sum of up to $500, *i.e.*, the amount available in statutory damages under the TCPA per violation, 47 U.S.C. § 227(b)(3). (Agr. ¶ III.G.2.b.) Class Members can recover a *pro rata* portion of the Settlement Fund after Settlement Administration Costs, Court-approved attorneys' fees and costs, and any Court-approved incentive award are deducted, through a straightforward claims process that only required completing a simple, one-page form. (Agr. ¶ II.A.4, Ex. A.) A total of 8,139 persons submitted Valid Claim Forms during the Claims Period. (Cooper Decl. ¶ 17.) Assuming that the Court approves the fees and costs application of Class Counsel, and the requested incentive award, each Settlement Class Member who submitted a Valid Claim Form is expected to receive approximately $200.[3]

In light of the very real litigation risks outlined above, particularly with Anthem's denial of any wrongdoing, combined with the fact that Plaintiff and Settlement Class Members faced lengthy, protracted, and expensive litigation had they not settled, this is a fair settlement that puts money in Settlement Class Members' pockets immediately. The Settlement should be approved.

> **2.     *The Risk, Expense, Complexity, and Likely Duration of Further Litigation.***

 "'The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *Cohn v. Nelson*, 375 F. Supp. 2d 844, 852 (E.D. Mo. 2005) (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel*

---

[3]     This amount is calculated by taking $4,750,000 Settlement Fund - $975,384 estimated Settlement Administration Costs - $2,083,333.33 requested attorneys' fees and costs - $10,000 requested incentive award) ÷ 8,139 Valid Claim Forms = $206.57 in estimated per-Settlement Class Member Benefits

*Tank Prod. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995)). "The possible length and complexity of further litigation is a relevant consideration to the trial court in determining whether a class action settlement agreement should be affirmed." *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, No. 03-015, 2004 WL 3671053, at *13 (W.D. Mo. Apr. 20, 2004) (citing *Petrovic*, 200 F.3d at 1152). Throughout the litigation and negotiation process, Anthem vigorously defended its position and expressed every intention of continuing a spirited defense, absent a settlement, through class certification and trial.  Class Counsel have a significant amount of experience in consumer class action litigation and know that any case involving a nationwide class can, and often does, lead to costly litigation that goes on for years.

Although Plaintiff has thoroughly investigated the factual and legal bases for his claims and has developed purported evidence supporting his allegations that Anthem violated the TCPA, one cannot ignore the presence of significant risks in continuing the litigation had settlement not occurred.  This case turns on, among other things, competing interpretations as to whether Plaintiff and the class "consented" to receiving automated calls from Anthem on their cell phones.  Plaintiff's position is that Anthem failed to obtain the required consent before causing the calls at issue to be made.  Plaintiff alleges that, as such, he and the class are entitled to minimum statutory damages of $500 per call. (DE 1, Compl. ¶ 19, at 5.)

Anthem, on the other hand, has steadfastly denied that it violated the TCPA, and asserted multiple affirmative defenses against Plaintiff's allegations, including consent and that any calls made in violation of the TCPA by an Anthem contractor or agent fell outside of the scope of their relationship, foreclosing Anthem's liability. (DE 13, Answer at 6-7.) In this case, the calls to Plaintiff and the other Settlement Class Members were all made by a third party, Alta Resources, Inc., (Agr. ¶ II.A.32), requiring Plaintiff to prove Anthem's vicarious liability for the

violations of its vendor. *See, e.g., Smith v. State Farm Mut. Auto. Ins. Co.*, No. 13-2018, 2013 WL 5346430, at *1 (N.D. Ill. Sept. 23, 2013) (granting motion to dismiss without prejudice in TCPA class action alleging defendant's liability based on federal common law principles of agency). Further, the TCPA permits calls that are made with the "prior express consent of the called party." 47 U.S.C. § 227(b)(1)(A). Thus, absent the Settlement, Plaintiff and the Class would face the real possibility of receiving no relief under the TCPA for the calls at issue.

Another risk Plaintiff faced going forward is that this Court would refuse to certify the class because of individualized issues of consent. Anthem had indicated to Plaintiff's counsel on numerous occasions that it had a significant class certification defense, and Plaintiff cannot discount the possibility that an opposition to class certification would have been successful. "Courts are split on whether the issue of individualized consent renders a TCPA class uncertifiable on predominance and ascertainability grounds, with the outcome depending on the specific facts of each case." *Chapman v. First Index, Inc.*, No. 09-5555, 2014 WL 840565, at *2 (N.D. Ill. Mar. 4, 2014) (citations omitted); *compare, e.g., Bridgeview Heath Care Ctr. Ltd. v. Clark*, No. 09-5601, 2011 WL 4628744, at *5 (N.D. Ill. Sept. 30, 2011) (granting class certification), *with O'Connor v. Diversified Consultants, Inc.*, No. 11-1722, 2013 WL 2319342, at *5 (E.D. Mo. May 28, 2013) (denying class certification).[4] If Anthem were able to present convincing facts to support its position, the Court could have refused to certify a class, leaving Plaintiff with only the ability to pursue his claims on an individual basis.[5] Instead, "[s]ettlement

---

[4]   Supreme Court precedent clarifies that such concerns do not apply to class certification for settlement purposes, as distinct from litigation purposes. In *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997), the Court noted that the manageability of a nationwide class, such as manageability issues arising from legal and factual variation, is not implicated in the settlement context, and need not be considered, because "the proposal is that there be no trial." *Id.* at 620.

[5]   Plaintiff also notes that some courts view awards of aggregate, statutory damages with

allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) (citation omitted).

Moreover, the FCC is currently considering numerous petitions, many of which were made by industry advocates urging the FCC to loosen prohibitions against so-called "auto-dialed calls."  Although Class Counsel actively advocates in the FCC in favor of consumers, the process can be quite unpredictable. For example, on October 30, 2014, the FCC issued an order re-confirming its unequivocal prior orders that facsimile advertisements must contain specific language explaining how recipients can "opt-out" of receiving more faxes, but providing *retroactive immunity* for violators that file petitions with the FCC, a wholly unexpected and incongruous result from the perspective of Plaintiff's counsel.[6] Some pending petitions—such as regarding the extent of consent needed under the TCPA or the definition of an "automatic telephone dialing system" – could, if granted, require additional discovery and even potentially hamper the ability of Plaintiff to obtain class-wide relief. Anthem's motion to stay based on some of these petitions was tabled while the parties focused on the mediation with Judge Phillips (DE 26-29), but will no doubt become an issue absent settlement.

Finally, there is a substantial risk of losing inherent in any jury trial.  Even if Plaintiff prevailed at trial, Anthem would almost certainly appeal, threatening a reversal of any favorable outcome and causing significant delays in obtaining any relief for Class Members.

---

skepticism and reduce such awards—even after a plaintiff has prevailed on the merits—on due process grounds.  *See, e.g., Aliano v. Joe Caputo & Sons—Algonquin, Inc.*, No. 09-910, 2011 WL 1706061, at *4 (N.D. Ill. May 5, 2011) ("[T]he Court cannot fathom how the minimum statutory damages award for willful FACTA violations in this case—between $100 and $1,000 per violation—would not violate Defendant's due process rights.... Such an award, although authorized by statute, would be shocking, grossly excessive, and punitive in nature.").

[6]        *See* http://transition.fcc.gov/Daily_Releases/Daily_Business/2014/db1030/FCC-14-164A1.pdf.

### 3.    *Lack of Opposition to the Settlement*

Given the payout of approximately $200 to each Settlement Class Member who submitted a Valid Claim Form, only 22 requests for exclusion, and only two objections, the overwhelmingly positive response and lack of opposition to the Settlement favors approval. (Cooper Decl. ¶¶ 15-16.) Class settlements under the TCPA are routinely approved that afford considerably less than each claiming Settlement Class Member will receive in this case.  *See, e.g., Rose v. Bank of Am. Corp.*, No. 11-02390, 2014 WL 4273358, at *10 (N.D. Cal. Aug. 29, 2014) (approving a TCPA class action settlement involving robocalling and noting that "[T]he $20 to $40 range falls in the lower range of recovery achieved in other TCPA class action settlements.").

"Courts often consider the number of objectors in determining whether the settlement is fair to the entire class." *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, No. 03-015, 2004 WL 3671053, at *13 (W.D. Mo. Apr. 20, 2004) (citing *Reynolds v. Nat'l Football League*, 584 F.2d 280, 287 (8th Cir. 1978)). Here, only two Settlement Class Members objected—amounting to 0.00024% of the Settlement Class. This is strong circumstantial evidence that the Settlement is fair; indeed, settlements have been approved over the objections of a larger percentage of the class. *See Petrovic*, 200 F.3d at 1152 ("[F]ewer than 4 percent of the class members objected to the settlement, significantly fewer than the number of objectors to other settlements that have been approved.") (citing *Van Horn v. Trickey*, 840 F.2d 604, 606 (8th Cir. 1988)).[7]

### 4.    *The Opinion of Counsel.*

Where class counsel are qualified and well informed, their opinion that a settlement is fair, reasonable, and adequate is entitled to significant weight.  *See In re BankAmerica Corp. Sec.*

---

[7]       The exclusion/objection deadline expired on December 27, 2014. (DE 46 ¶ 12, 15.)

*Litig.*, 210 F.R.D. 694, 702 (E.D. Mo. 2002) ("Although the Court is not bound by counsel's opinion, their opinion nevertheless is entitled to great weight.") (citing *EEOC v. McDonnell Douglas Corp.*, 894 F. Supp. 1329, 1335 (E.D. Mo. 1995)). Here, Class Counsel – with substantial experience in consumer and class action litigation, including under the TCPA – believe that the Settlement is fair, reasonable, adequate, and in the best interest of the Settlement Class as a whole.  (Burke Decl. ¶¶ 2-11, 16.)

### 5.     *The Extent of Discovery Completed and the Stage of the Proceedings*

Courts consider the extent of discovery and the stage of the proceedings in determining whether a class settlement is fair, adequate, and reasonable.  *See In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002) ("[A] presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery.") (quoting Fed. Judicial Ctr., Manual for Complex Litig. § 30.42 at 240 (3d ed. 1997).

The Settlement is the result of a thorough investigation and evaluation of Plaintiff's legal claims, extensive formal and informal discovery conducted while engaging in more than a year of litigation, and numerous arm's-length settlement negotiations, including before an experienced third-party neutral, the Honorable Layn R. Phillips (retired). (Burke Decl. ¶ 12.) The fact that the Settlement was achieved through negotiations by well-informed counsel and through a mediation before a retired federal judge favors approval.

## II.     THE OBJECTORS' ARGUMENTS FAIL TO DILUTE THE OVERALL FAIRNESS, REASONABLENESS, AND ADEQUACY OF THE SETTLEMENT.

Out of 830,953 Settlement Class Members, a mere two objected to the Settlement. One, Anthony R. Brookman, only objects to the proportion of anticipated per-Settlement Class Member Benefits to the requested incentive award. (DE 54.) The other, Glenn J. Kassiotis, is

represented by John W. Davis, a professional objector offering a "kitchen sink" approach of meritless objections, many of which do not appear to be tailored to the circumstances of this settlement. (DE 52.) These objections are easily addressed, and should not dissuade the Court from approving the Settlement.

As to Mr. Brookman's objection regarding the proportionality of anticipated per-Settlement Class Member Benefits to the requested $10,000 incentive award, Plaintiff notes that, based on the number of Valid Claim Forms submitted, Settlement Class Members who submitted Valid Claim Forms are now expected to receive approximately $200 – not the $36 originally anticipated.[8] Both amounts fall within the reasonable range of relief approved by other courts in TCPA class actions.[9] Further, $10,000 fits within the range of incentive payments awarded in class actions,[10] and here, it makes up less than 0.211% of the Settlement Fund, impacting the amount of per-Settlement Class Member Benefits by less than a dollar.  Plaintiff Lees has expended considerable time and effort on behalf of the Settlement Class—gathering key facts and documents, reviewing pleadings and other filings, assisting with discovery, working with

---

[8]   *See* footnote 3, supra.

[9]   *See, e.g., Adams v. AllianceOne Receivables Mgmt., Inc.*, No. 08-00248, Dkt. Nos. 116, 137 (S.D. Cal. 2008) (approving TCPA class settlement with claimant recovery of $40); *Bellows v. NCO Fin. Sys., Inc.*, No. 07-01413, 2008 WL 5458986, at *5 (S.D. Cal. Dec. 10, 2008) (approving TCPA class settlement with claimant recovery of $70); *In re Capital One TCPA Litig.*, No. 11-5886, 2015 WL 605203, at *5 (N.D. Ill. Feb. 12, 2015) (approving TCPA class settlement with claimant recovery of $34.60).

[10]  *See, e.g., Vandervort v. Balboa Capital Corp.*, 8 F. Supp. 3d 1200 (C.D. Cal. 2014) (awarding $10,000 incentive award in TCPA class settlement); *Benzion v. Vivint, Inc.*, No. 12-61826, Dkt. No. 201 (S.D. Fla. Feb. 23, 2015) (awarding $20,000 incentive award in TCPA class settlement); *Desai v. ADT Security Servs., Inc.*, No. 11-1925, Dkt. No. 243 ¶ 20 (N.D. Ill. Feb. 27, 2013) (awarding $30,000 incentive awards in TCPA class settlement); *Sauby v. City of Fargo*, No. 07-10, 2009 WL 2168942, at *3 (D.N.D. July 16, 2009) (approving $10,000 incentive award, citing Sherrie R. Savett, et al., *Consumer Class Actions: Class Certification Issues, Including Ethical Considerations and Counsel Fees and Incentive Award Payments to Named Plaintiffs*, 936 PLI/Corp. 321, 340 (1996), for "listing 52 cases involving incentive award payments wherein the plaintiffs were awarded between $1,000 and $200,000, with over half of the awards falling between $5,000 and $10,000").

counsel to negotiate the settlement, and generally participating in the litigation of this action. (Burke Decl. ¶ 15.)

Plaintiff has opened himself up to public scrutiny as a result of his participation in this case, and without his initiative in pursuing this action on a class-wide basis, the vast majority of Settlement Class Members would be without any viable means of relief. Given the relatively small damages inherent in TCPA and other consumer disputes compared to the time and resources needed to effectively pursue litigation—and the fact that, especially in the case of statutory violations, consumers are often unaware that a cause of action is even available—it is no secret that some consumers face widespread illegal business practices are left without any viable means of obtaining relief absent a class action.[11] Thus, in light of the benefits conferred on the Settlement Class by Plaintiff's participation as named plaintiff, the time spent by Plaintiff Lees in this action, and the objective reasonableness of the requested award based on what has been approved in similar class actions, the Court should approve Plaintiff's request for a $10,000 incentive award in this case.

Mr. Kassiotis, on the other hand, is represented by John W. Davis, a known professional

---

[11]     *See, e.g., AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1761 (2011) (Breyer, J., dissenting) (approving of assertion in *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004), that "[t]he *realistic* alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30"); *Watkins v. Simmons & Clark, Inc.*, 618 F.2d 398, 403-04 (6th Cir. 1980) ("Precisely because the violations are technical, ... most of the members of the consumer class will not be aware of them unless they should encounter a practicing attorney versed in the Act."); *Schwarm v. Craighead*, 233 F.R.D. 655, 664 (E.D. Cal. 2006) ("A class action is also superior to the litigation of the putative members' individual claims. Not only are most individual consumers unaware of their rights under the FDCPA, but also the size of the individual claims is usually so small there is little incentive to sue individually.") (citation and quotations omitted); *Walker v. Calusa Investments, LLC*, 244 F.R.D. 502, 511 (S.D. Ind. 2007) ("Consumer claims, like those involved in this case, are commonly certified for class treatment because of the difficulty of bringing such claims individually and the common questions that are often involved in such suits.... [T]here is a strong presumption in favor of a finding of superiority when the alternative to a class action is likely to be no action at all for the majority of class members.") (citations omitted).

objector.[12] "Federal courts are increasingly weary of professional objectors[,] ... 'who seek out class actions to simply extract a fee by lodging generic, unhelpful protests.'" *O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266, 295 (E.D. Pa. 2003) (quoting *Shaw v. Toshiba Am. Information Sys., Inc.*, 91 F.Supp.2d 942, 973 (S.D. Tex. 2000); *see also In re UnitedHealth Grp. Inc. PSLRA Litig.*, 643 F. Supp. 2d 1107, 1108 (D. Minn. 2009) (comparing professional objectors to ocean parasites: "The remoras are loose again.... These objectors have contributed nothing.... Their goal was, and is, to hijack as many dollars for themselves as they can wrest from a negotiated settlement.... Objectors' request and their motion ill-befit attorneys admitted to the bar."). Here, the conduct and the frivolity of Mr. Davis' arguments have been directly called into question by other courts.[13]

---

[12]    Mr. Kassiotis failed to submit a valid objection pursuant to the Preliminary Approval Order. Although the Court's Order clearly required any objection to include the objector's "address [and] cellular phone number(s) that were called" (DE 46 ¶ 14), Mr. Kassiotis did neither, and failed to cure this fatal defect even after having been given written notice. (Burke Decl. ¶ 14.) As such, Mr. Kassiotis' objection was improper and invalid, and he should be prohibited from appearing or having his objections considered by this Court. *See* (DE 46 ¶ 15) ("No Settlement Class Member shall be entitled to be heard and no objection shall be considered unless the requirements set forth herein are satisfied.").

[13]    *See, e.g., Davis v. Apple Computer, Inc.*, No. A105539, 2005 WL 1926621, at *3, 12 (Cal. Ct. App. Aug. 12, 2005) (finding that "Davis engaged in questionable conduct in the prior class actions," and discussing his "past objectionable conduct" in context of defense argument that "he has a history of compromising the interests of unnamed parties to benefit himself and his counsel [and] has engaged in 'unsavory' litigation tactics"); *Faught v. Am. Home Shield Corp.*, 444 F. App'x 445, 446 (11th Cir. 2011) (affirming denial of attorneys' fees and costs to Mr. Davis and other objectors, noting that "[t]he district court laid out in detail how the objectors' claims were based on speculation that is unsupported by the record"); *Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 63 (Cal. Ct. App. 2008) ("The alternative ... [claims process] Davis would apparently prefer ... seems highly unfair and impractical[.]"); *Wal-Mart Stores, Inc. v. Buholzer*, 156 F. App'x 346, 348 (2d Cir. 2005) (affirming district court's adoption of special master's recommendation that Davis and co-objectors receive substantially less compensation than requested—upon a finding that their "contributions were 'minimal in the overall resolution of the issue' and 'did not drive' the court's decision"—and indicating that the arguments on appeal were "unavailing and, indeed, border on being frivolous"); *In re Visa Check/MasterMoney Antitrust Litig.*, No. 96-5238 (E.D.N.Y. Apr. 27, 2004) (recommending fee reduction and finding that Mr. Davis and his co-counsel's requested fee and cost award of $193,084.73 was "excessive

Mr. Davis and his client present a hodgepodge of meritless objections attacking the Settlement. Mr. Kassiotis objects to Settlement Class Members receiving a flat *pro rata* division of Settlement Benefits, rather than one based on the number of times each specific consumer was purportedly called. (DE 52 at 2-3.) However, a settlement is, by its very nature, a compromise. *See Thompson v. Metro. Life Ins. Co.*, 216 F.R.D. 55, 65 (S.D.N.Y. 2003) ("Contrary to the objectors' expectations, the settlement is not a wish-list of class members that the Defendant must fulfill.... These and other objectors fail to understand that the form and amounts of benefit provided were arrived at as a result of hard-fought negotiations between experienced class action attorneys.") (citation and quotations omitted). Mr. Kassiotis' argument ignores the fact that class settlements based on alleged violations of 47 U.S.C. § 227(b)(1)(A)(iii) regularly distribute settlement benefits on a flat *pro rata* basis, which is significantly easier to manage and provides more money overall to class members. The objector's proposed approach would greatly "increase[]administration costs [which] would result in a corresponding decrease in the money available to the class." *Wilkins v. HSBC Bank Nevada, N.A.,* 2015 WL 890566, at *13 (N.D.Ill., Feb 27, 2015); *In re Capital one Telephone Consumer Protection Act Litig.,* --- F.Supp.3d ----, 2015 WL 605203, at *9 (N.D.Ill. Feb. 12, 2015).

This is especially true in a case like this one, where there is a large Settlement Class, but individual members generally would have received only one or a small number of calls. (Burke Decl. ¶ 12.) Settlement Class Members who received a substantial number of calls or who otherwise wished to pursue their claims against Anthem on an individual basis were freely able to opt out of the Settlement. (Agr. ¶ III.J.) That the vast majority of Settlement Class Members

---

and unreasonable," where the two attorneys purported to bill 254.2 hours for drafting a 14-page brief and travelling to the fairness hearing at which "only Mr. Davis spoke[,] ... consist[ing] of a brief recitation of some of the points made in [the objector's] submission") (DE 1051 at 21-24).

chose not to do so supports the fairness of the Settlement.

Mr. Kassiotis further objects that "the settling parties have not provided the class size[,]" and that "[a]s a result, class members are unable to calculate a range of outcomes based on the number of claims submitted." (DE 52 at 3.) This is false.[14] Not only was this information contained in the preliminary approval motion filed with the Court and posted on the settlement website for download, but this information is even directly stated in the long-form Website Notice, itself, as well as the website's "FAQs" section.[15]

Mr. Kassiotis also objects to the requested fee award. (DE 52 at 4-7.) First, Mr. Kassiotis objects on the basis that the objection deadline preceded the deadline for Class Counsel's motion for attorneys' fees, relying on the Ninth Circuit's *In re Mercury Interactive Corp. Sec. Litig.* opinion. (DE 52 at 4.) The Federal Rules, however, only require that "*[n]otice* of the motion ... be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." Fed. R. Civ. P. 23(h)(1) (emphasis added). Here, not only did the Class Notice and preliminary approval materials directly notify the Settlement Class of the motion and requested fee amount,[16] but Class Counsel filed their motion for attorneys' fees—posted for download from the Website Notice website—several months prior to the court-ordered deadline for doing so. And while Mr. Kassiotis later felt the need to supplement his objection with, as

---

[14]      This information is also not even required. *See Petrovic*, 200 F.3d at 1153 ("We do not agree with the objectors' contention that a mailed notice of settlement must contain a formula for calculating individual awards. It is well settled that the notice is not required to provide a complete source of information.... In our case the mailed notice provided a reasonable summary of the stakes of the litigation, and class members could easily acquire more detailed information ... through the telephone number that was provided. Due process requires no more.") (citations and quotations omitted).

[15]      *See* https://www.anthemtcpasettlement.com/faqs.aspx#q5 ("The class is comprised of persons assigned to the approximately 830,000 unique cellular phone numbers[.]").

[16]      *See* (DE 45 at 4-5, 15-16; DE 45-1 at 37, 58); https://www.anthemtcpasettlement.com/faqs.aspx#q17.

discussed below, irrelevant case law regarding class action *cy pres* awards (DE 55), he notably

chose <u>not</u> to address the substantial case law supporting Class Counsel's fee petition, waiving

any further objection. Mr. Kassiotis' citation to non-binding case law from the Ninth Circuit

simply fails to address the notice requirements in *this* Circuit, which—like other jurisdictions[17]—

holds that notice, alone, satisfies due process.[18]

Moreover, Class Counsel's fee request of one-third of the total $6.25 million potentially

available common fund is in line with other common fund cases. "In the Eighth Circuit, courts

have routinely awarded attorney fees ranging from 25% to 36% of a common fund under the

percentage-of-the-fund method." *Yarrington v. Solvay Pharm., Inc.*, 697 F. Supp. 2d 1057, 1061

(D. Minn. 2010) (citing *In re Xcel Energy, Inc. Litig.*, 364 F. Supp. 2d 980, 998 (D. Minn. 2005),

citing cases).  Further, "[i]t is appropriate to apply a reasonable percentage to the gross

settlement fund."  *W. v. PSS World Med., Inc.*, No. 13-574, 2014 WL 1648741, at *1 (E.D. Mo.

---

[17]    *See, e.g., Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 699 (S.D. Fla. 2014) (rejecting the *In re Mercury Interactive Corp. Secs. Litig.* ruling cited by Mr. Kassiotis, noting that the "rule is not universal, and the rule has been rejected by at least one other Circuit") (citing *Cassese v. Williams*, 503 Fed. Appx. 55, 57 (2d Cir. 2012)); *In re Excess Value Ins. Coverage Litig.*, 598 F. Supp. 2d 380, 392 (S.D.N.Y. 2005) (finding failure to adhere to Fed. R. Civ. P. 23(h) because "[n]either the 'Long Form' nor the 'Short Form' Settlement Notice to the Class contained any mention of the *proposed* Incentive Compensation") (emphasis added).

[18]    *See* Fed. R. Civ. P. 23, 2003 Committee Notes, *Subdivision (h)* ("When a settlement is proposed for Rule 23(e) approval, ... notice to class members about class counsel's fee motion would ordinarily accompany the notice to the class about the settlement proposal itself."); *In re UnitedHealth Grp. Inc. S'holder Derivative Litig.*, 631 F.3d 913, 918 (8th Cir. 2011) (finding notice that "discussed in detail the terms of the settlement and included an estimate of the fees and expenses that would be requested" sufficient, and citing with approval *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 122 (8th Cir. 1975), "noting that it was sufficient if a notice contained a general summary of benefits to class members and an 'estimation' of attorneys fees and expenses"); *Petrovic*, 200 F.3d at 1153 ("It is well settled that the notice 'is not required to provide a complete source of information.'") (quoting *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1176 (8th Cir. 1995)); *see also Bredthauer v. Lundstrom*, No. 10-3132, 2012 WL 4904422, at *6 (D. Neb. Oct. 12, 2012) ("The notice satisfies ... Rule 23(h)(1), as it notifies proposed class members that counsel for plaintiffs will apply to the Court for attorneys' fees and expenses, including an award of attorneys' fees of approximately 33% of the settlement amount and will seek reimbursement of litigation costs and expenses to be paid from the Settlement Fund.").

Apr. 24, 2014) (citing *Ramsey v. Sprint Commc'ns Co.*, No. 11–3211, 2012 WL 6018154, at *4 & n. 1 (D. Neb. Dec. 3, 2012), for approving a fee based on gross fund because "[t]he available settlement funds are an appropriate measure of the benefit accrued by the class members, regardless of whether the full measure of that sum is actually claimed").[19]

Instead of addressing the law in *this* Circuit, however, Mr. Kassiotis again relies on case law from the Seventh Circuit to argue that the calculation of Class Counsel's fees must be based on the minimum made available for the Settlement Class under the Settlement, minus any administrative costs. (DE 52 at 5.)  And, although it is true that the Seventh Circuit held that the cost of notice should not be included in the benefit to the class, Plaintiff submits that the more recent decision from the Ninth Circuit in *In re Online DVD-Rental Antitrust Litig.*, --- F.3d ----, 2015 WL 846008, at *13 (9th Cir. Feb. 27, 2015), is more correct, because notice to the class is a direct *benefit* to the class. Many hundreds of thousands of persons were provided the opportunity to obtain substantial monetary benefit, and were also provided with the opportunity to opt out and pursue their own claims. None of this would be possible without notice to the class. The proposed fee award was only negotiated after the parties came to terms on relief for the Settlement Class—including millions of dollars in relief. (Burke Decl. ¶ 12; Agr. ¶¶ III.G.1-2.) This is an effective settlement, and Class Counsel should be fairly compensated for the risk,

---

[19]     *See also Boeing Co. v. Van Gemert*, 444 U.S. 472, 480 (1980) (stating that the right of class members "to share the harvest of the lawsuit[,] ... whether or not they exercise it, is a benefit in the fund created by the efforts of the class representatives and their counsel"); *McKinnie v. JP Morgan Chase Bank, N.A.*, 678 F. Supp. 2d 806, 815 (E.D. Wis. 2009) (citing 4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 14:6, p. 570 (4th ed. 2002), for the proposition that *Van Gemert* "settled the issue of whether the benchmark common fund amount for fee award purposes is made up of the amount claimed by class members or the amount potentially available to class members by ruling that class counsel are entitled to a reasonable fee based on the funds *potentially* available to be claimed, regardless of the amount actually claimed") (emphasis added).

time, and resources put into achieving it.[20]

Finally, Mr. Kassiotis objects to the intended *cy pres* recipient, as well as any excess monies remaining going to *cy pres* to the extent that per-Settlement Class Member Benefits exceed the $500 cap under the Settlement. (DE 52 at 8-9.) These objections are moot because, at approximately $200 (based on the number of Valid Claim Forms actually submitted), the amount of per-Settlement Class Member Benefits will <u>not</u> exceed the $500 cap. Thus, the only monies going to *cy pres* will be the nominal amount from uncashed settlement checks. (Agr. ¶ III.G.6.) Mr. Kassiotis' objection and supplemental authority citing to *In re BankAmerica Corp. Sec. Litig.*, 775 F.3d 1060 (8th Cir. 2015), is therefore irrelevant because a second distribution would not be economically viable. Further, for the nominal amount here, the parties believe that Community Health Charities is a deserving and appropriate *cy pres* recipient given the healthcare-related nature of the calls at issue. These objections simply fail to overcome the overall fairness of the Settlement.

## III.    CONCLUSION

The Settlement is fair, adequate, and reasonable, providing substantial benefits to the Settlement Class through not only prospective relief, but direct monetary payments of approximately $200 to each Settlement Class Member who submitted a Valid Claim Form. This is an outstanding result in light of the recoveries potentially available under the law and the risks of continued litigation, and the Court should, therefore, approve the Settlement in its entirety. Class Counsel also respectfully requests that the Court award Class Counsel $2,083,333.33 in requested attorneys' fees and costs, amounting to one-third of the potential gross fund achieved

---

[20]    Mr. Kassiotis also objects to the requested $10,000 incentive award to Plaintiff Lees. (DE 52 at 8.) However, as discussed above, courts routinely grant incentive awards of more than $10,000 in consumer class actions.

for the Settlement Class.  Class Counsel further requests that the Court approve an incentive

award of $10,000 for the Settlement Class representative, Ronald Lees.

WHEREFORE, Plaintiff Ronald Lees respectfully requests that the Court grant final

approval of this class action settlement in its entirety.


Dated:      March 26, 2015                                    Respectfully submitted,

                                                             RONALD LEES, on behalf of himself
                                                             and others similarly situated


                                                             By:   /s/  David M. Marco
                                                                   Counsel for Plaintiff and the Class

Larry P. Smith
David M. Marco
SMITH MARCO, P.C.
205 N. Michigan Ave., Suite 2940
Chicago, IL 60601
Telephone: (312) 546-6539
Facsimile: (888) 418-1277
lsmith@smithmarco.com
dmarco@smithmarco.com

Alexander H. Burke
BURKE LAW OFFICES, LLC
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
Telephone: (312) 729-5288
Facsimile: (312) 729-5289
aburke@burkelawllc.com

*Counsel for Plaintiff and the Settlement Class*

## CERTIFICATE OF SERVICE

I hereby certify that on March 26, 2015, I electronically filed the foregoing document with the Clerk of the Court, using the CM/ECF system, which will send a notice of electronic filing to the following:

Christine N. Czuprynski
Dan J. Hofmeister
David Z. Smith
James A. Rolfes

REED SMITH LLP
10 S. Wacker Dr., Suite 4000
Chicago, IL 60606
cczuprynski@reedsmith.com
dhofmeister@reedsmith.com
dzsmith@reedsmith.com
jrolfes@reedsmith.com


*Counsel for Defendant*

John W. Davis
LAW OFFICE OF JOHN W. DAVIS
501 W. Broadway, Suite 800
San Diego, CA 92101
john@johnwdavis.com

*Counsel for Objector Glenn Kassiotis*

A copy of the foregoing will also be provided by U.S. Mail to the following:

Anthony R. Brookman
3227 Renwick Ave., #111
Elk Grove, CA 95758

*Objector*

          /s/ David M. Marco