UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
ST. LOUIS DIVISION

| | |
|---|---|
| RONALD LEES, on behalf of Himself and others similarly situated,<br><br>                Plaintiff,<br><br>v.<br><br>ANTHEM INSURANCE COMPANIES INC., d/b/a ANTHEM BLUE CROSS BLUE SHIELD,<br><br>                Defendant. | Case No. 4:13-cv-01411-SNLJ<br><br>**CLASS MEMBER GLENN KASSIOTIS'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION AND INCORPORATED MEMORANDUM IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:   April 9, 2015<br>Time:  10:00 a.m.<br><br>Hon. Stephen N. Limbaugh, Jr. |

## I. INTRODUCTION

The settling parties have failed to produce sufficient evidence to support the proposed settlement. In addition to the absence of evidence to support valuation of claims, the rejection of 2,712 claims (approximately 23% of the total claim forms submitted) because the telephone number on the claim form "did not match the class list" suggests that discovery was inadequate to properly identify all members of the class. *See Declaration of Phil Cooper Re: Notice Procedures*, Doc. 59-2 at ECF 5, ¶ 17.

Additionally, Plaintiff Ronald Lees's ("Plaintiff" or "Lees") request for attorneys' fees should be based on the $4.75 million made available to the class by Defendant Anthem Insurance Companies, Inc. ("Defendant" or "Anthem") rather than the contingent settlement amount of

$6.25 million.  *See Plaintiff's Motion and Incorporated Memorandum in Support of Final Approval of Class Action Settlement* ("*MFA*"), Doc. 59 at 18.

Finally, Plaintiff has improperly sought to bias this Court with a misplaced *ad hominem* attack on objector Glenn Kassiotis's ("Objector" or "Kassiotis") counsel.  In so doing, Plaintiff and his counsel have made misrepresentations to the Court as explained below, thereby calling into question their competence and credibility with regard to representing the class.  In any event, this proceeding should not be based on name-calling, but upon the evidence before this Court and applicable law.

In addition to the following argument, Objector incorporates by reference herein his Objection to Proposed Settlement (Doc. 52).

## II. MR. KASSIOTIS HAS STANDING TO APPEAR BEFORE THIS COURT AND VOICE CONCERNS REGARDING THE PROPOSED SETTLEMENT

Plaintiff argues that Mr. Kassiotis's concerns should be ignored because he "failed to submit a valid objection pursuant to the Preliminary Approval Order."  *MFA*, Doc. 59 at 15, n.12.  This is not true.  Mr. Kassiotis timely filed his objection (Doc. 52) which was received by the Court and filed on December 23, 2014.  The objection included contact information for Mr. Kassiotis through counsel.  Mr. Kassiotis concurrently submitted a sworn declaration confirming class membership.

On or about January 20, 2015, Mr. Kassiotis's counsel received an email from Plaintiff's counsel asking for Objector's address and telephone number (presumably his home address and telephone number as his counsel's address and telephone number were included in the objection).  *See Declaration of Alexander Burke*, Doc. 59-1, Ex. A.  Plaintiff's counsel offered no reason for the request other than these items were "required by the settlement."  In response, and in order to assist Plaintiff in investigating Mr. Kassiotis's claim, Mr. Kassiotis filed a

2

supplemental declaration with the Court on January 23, 2015 (Doc. 56) to which he attached the claim form he had timely submitted to the Claims Administrator.  Doc. 56-1.

Mr. Kassiotis redacted his address and telephone number from the claim form filed with the Court in accordance with Local Rule 5-2.17(5).  Nevertheless, given Mr. Kassiotis's claim number, Plaintiff could have easily obtained Mr. Kassiotis's address, telephone number, and other relevant information from the Claims Administrator.  Notably, Mr. Kassiotis's counsel received no further inquiry from Plaintiff after filing the supplemental declaration with the claim form attached.

Now, Plaintiff asks the Court to disregard Mr. Kassiotis's concerns because of alleged non-compliance with the Preliminary Approval Order.  This is nonsense.  It is troubling that Plaintiff would seek to shield the proposed settlement from judicial scrutiny by manufacturing controversy where none exists.  Mr. Kassiotis has provided all information necessary to the evaluation of his claim and objection.  Moreover, even if Objector had not produced the requested information, "Objections which have been brought to the attention of the court and of counsel for proponents of a settlement by counsel for objectors should not be disregarded simply because they do not precisely comply with the procedures for the filing of individual objections specified in the notice of settlement."  *Weinberger v. Kendrick*, 698 F.2d 61, 69  n.10 (2d Cir. 1982).  *See also In re Gen Amer. Life Ins. Co. Sales Practices Litig.*, 268 F.3d 627, 635 (8th Cir. 2001) (court would not construe letters signed by class members' attorneys to violate court order requiring class members to sign opt-out letters personally).

### III. THE SETTLING PARTIES HAVE NOT PROVIDED SUFFICIENT EVIDENCE TO SUPPORT THE PROPOSED SETTLEMENT

The record in this matter is conspicuously devoid of any evidence supporting settlement valuation.  Based on the record before it, the Court lacks sufficient information to determine the

fairness, adequacy, and reasonableness of the proposed settlement.

Plaintiff acknowledges the case was settled "before extensive motion practice." *Burke Decl.*, Doc. 59-1, ¶ 12. Indeed, a review of the docket reveals not one adversarial proceeding since Plaintiff filed his complaint. Plaintiff appears to have conducted limited discovery which could be categorized as "confirmatory" at best. The only evidence submitted in support of the settlement (aside from the Claims Administrator's declaration regarding notice procedures) is a one paragraph statement of Plaintiff's counsel where counsel asserts:

> My firm issued multiple subpoenas to third parties and engaged in substantial arms-length discovery talks with Anthem, before settling. Moreover, Anthem provided information regarding it [sic] (and its vendor Alta's) calling practices, call records and dialer equipment, as well as information used to identify the 830,953 cellular telephone numbers that were called. This [sic] information and materials assisted us in effectively negotiating on behalf of the class, and ultimately informed the settlement.[1]

*Burke Decl.*, Doc. 59-1 at ECF 7, ¶ 12.

Plaintiff's evidence in support of the settlement is limited to the self-serving statements of counsel essentially averring that class counsel have prosecuted other Telephone Consumer Protection Act ("TCPA") cases and that they saw what they needed to see. There is no evidence that Plaintiff undertook sufficient discovery to adequately identify all class members, or that Plaintiff conducted investigation sufficient to confirm class membership information provided by Defendant. Moreover, there is no evidence of the methodology used to obtain that information. *See, e.g., Kullar v. Foot Locker Retail,* 168 Cal.App.4th 116, 129 (2008) ("The record fails to establish in any meaningful way what investigation counsel conducted or what information they

---

[1] Plaintiff purports to have also disclosed the class size (*MFA*, Doc. 59 at 17). However, what Plaintiff disclosed was the number of telephone numbers called based on Defendant's representation – not the actual number of class members, each of whom could possess more than one telephone number. This is a significant distinction because, according to the Notice, compensation is based on the settlement fund divided by the number of "actual" class members. *See Notice to Class Members*, ¶ 7; *see also Preliminary Approval Order*, Doc. 46 at 2.

4

reviewed on which they based their assessment of the strength of the class members' claims, much less does the record contain information sufficient for the court to intelligently evaluate the adequacy of the settlement.")

Notably, it appears that Plaintiff was not even aware of the number of telephone numbers called, or the class size, prior to settlement. In fact, the Preliminary Approval Order contains a blank space where such information would have been included. Doc. 46 at 2. The information is similarly absent from the Order Amending Preliminary Approval Order discussing notice to the class. Doc. 49. Had Plaintiff possessed information concerning class size prior to settlement, surely he would have included it in at least one of two proposed orders concerning preliminary approval. Indeed, the Settlement Agreement specifically precludes Plaintiff from engaging in *bona fide* discovery stating:

> C. <u>Confirmatory Affidavits</u>. As soon as reasonably possible, Anthem shall provide to Class Counsel **confirming affidavits** from Alta and Compliance Point regarding the total number of unique cellular phone numbers Alta called on behalf of Anthem (or any of its parents, subsidiaries, affiliates, officers, directors, or employees) from July 15, 2009 through July 17, 2014. **Anthem shall have no other obligation to provide any information or discovery in this matter**.

*Settlement Agreement*, Doc. 45-1 at ECF 9-10, § III(C) [emphasis added].

Courts have rightly criticized informal discovery and confirmatory discovery taken after the settlement was already reached. *See Reynolds v. Beneficial Nat. Bank,* 260 F.Supp.2d 680, 685-689 (N.D. Ill. 2003) (lengthy criticism of informal discovery). This Court should be equally skeptical. *See also In re Community Bank of Northern Virginia*, 418 F.3d 277, 307 (3d Cir. 2005) ("we are loathe to place ... dispositive weight on the parties' self-serving remarks"), *citing In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768, 804 (3d Cir. 1995).

Plaintiff's lack of diligence is particularly disturbing here given that the Claims

Administrator rejected close to 25% of the claims submitted because the telephone numbers did not match up with the list provided by Defendant. *Cooper Decl.*, Doc. 59-2 at ECF 5, ¶ 17. The sheer volume of "deficient" claims suggests a problem with the parties' methodology in determining class membership, the efficacy of the notice campaign, or both. There is no evidence before the Court that would justify such a large rejection rate.[2]

Moreover, courts must be "even more scrupulous than usual in approving settlements where no class has yet been formally certified." *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 946-947 (9th Cir. 2011) *citing In re Gen. Motors*, 55 F.3d at 805; *Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust Co. of Chicago*, 834 F.2d 677, 681 (7th Cir. 1987) (Posner, J.) ("[W]hen class certification is deferred, a more careful scrutiny of the fairness of the settlement is required."); *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982) (Friendly, J.) (reviewing courts must employ "even more than the usual care"); *see also* Manual for Complex Litig. § 21.612 (4th ed. 2004).

## IV. CLASS COUNSEL'S FEE SHOULD BE BASED ON THE VALUE CONFERRED ON THE CLASS RATHER THAN THE CONTINGENT SETTLEMENT VALUE

As a threshold matter, Plaintiff claims that Mr. Kassiotis has somehow "waived" his right to comment on Plaintiff's requested fee award. *MFA*, Doc. 59 at 18. This is false. First, Mr. Kassiotis timely objected to the requested fee in his Objection to Proposed Settlement (Doc. 52 at 4-7). Second, all materials which may have been submitted in support of the motion were not filed with the Court until March 26, 2015 when Plaintiff disclosed, based on claims submitted, the floor of $36 per class member had been met. *MFA*, Doc. 59 at 7, n.3. Accordingly, the contingent settlement value of $6.25 million was not triggered and the actual gross settlement

---

[2] If Defendant is unwilling to provide more information on the record, or Plaintiff is uninterested in pursuing the issue, Objector respectfully requests leave to conduct limited discovery on these discrete issues.

6

fund available to the class is $4.75 million. *Id.*; *see also Settlement Agreement*, Doc. 45-1 at ECF 12, § 2(c).

Given that Defendant is funding a settlement worth $4.75 million, Plaintiff's fee should be based on that amount, not the contingent $6.25 million figure as requested by Plaintiff. Indeed, the additional $1.5 million does not even qualify as a reversionary payment to Defendant as not one penny of that amount will be paid by Defendant in the first place. The two-tiered settlement structure does not benefit the class and appears to simply be a clever device whereby Plaintiff may seek additional attorneys' fees. This view is bolstered by the substantial difference between the $36 recovery estimate published by Plaintiff (*Class Notice*, Doc. 45-1 at ECF 37; Doc. 45-1 at ECF 55, ¶ 7) and the actual anticipated recovery of $206.57. *MFA,* Doc. 59 at 7, n.3. Of course, this disparity may also be based on Plaintiff's failure to conduct adequate discovery as discussed above. Either way, Plaintiff's attorneys' fees should be based on the amount actually available to the class rather than a theoretical contingent figure.

Courts in this Circuit have the discretion to utilize either the "percentage of the recovery" or "lodestar" method in setting a reasonable fee. *In re BankAmerica Corp. Sec. Litig.*, 228 F.Supp.2d 1061, 1064 (E.D. Mo. 2002) *citing Johnston v. Comerica Mortgage Corp.*, 83 F.3d 241, 245 (8th Cir. 1996). Even when, as Plaintiff requests here, a court favors the "percentage of the fund" in favor of the "lodestar" approach, *see, e.g., In re Chrysler Motors Corp. Overnight Eval. Program Litig.*, 736 F. Supp. 1007, 1016 (8th Cir. 1990), counsel's lodestar remains an important tool for cross-checking contingency fees in order to avoid an inappropriate windfall. *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1157 (8th Cir. 1999); *see also In re BankAmerica Corp.*, 228 F.Supp.2d at 1065-1066. The only fee award that could be considered reasonable under the circumstances is one that compensates class counsel for work that benefited the class

7

without negating such benefit in the process or creating a windfall for counsel. *Grunin v. Intl. House of Pancakes*, 513 F.2d 114, 127 (8th Cir. 1975), *cert. denied*, 423 U.S. 864 (1975) (the primary concern is to ensure that such awards reasonably compensate the attorneys for their services, and are not excessive, arbitrary, or detrimental to the class).

Federal courts award attorneys' fees under the common fund doctrine as a matter of federal common law, based on "the historic equity jurisdiction of the federal courts." *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 164 (1939). "[W]hen attorneys make a claim for fees from a common fund ... their interest is adverse to the interest of the class in obtaining recovery because the fees come out of the common fund set up for the benefit of the class. This divergence of interests requires a court to assume a fiduciary role in reviewing fee applications. . ." *In re BankAmerica Corp.*, 228 F.Supp.2d at 1064. In awarding attorneys' fees from the common fund generated by litigation, courts are bound by traditional principles of equity and we must review awards to class counsel and objectors in that light. *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 273 F. Supp. 2d 563, 565 (D.N.J. 2003), *aff'd sub nom. In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 103 F. App'x 695 (3d Cir. 2004), *citing Boeing v. Van Gemert*, 444 U.S. 472, 478 (1980).

Even a 33% fee is on the high end of what courts typically approve in TCPA cases. *Fitzgerald v. Gann Law Books*, No. 2:11-04287, slip op. at 10-15 (D.N.J., December 17, 2014).[3] However, here Plaintiff's attorneys seek an effective fee of approximately 44% ($2,083,333.33 / $4,750,000.00). *MFA* at 7, n.3. Accordingly, the Court should carefully consider whether that percentage results in a windfall to counsel. This is critical because every dollar that is paid in attorneys' fees is taken from the fund available to class members. Additionally, an appropriate

---

[3] The *Fitzgerald* opinion is attached hereto as Exhibit A.

8

starting point for any contingency fee analysis is the benefit actually conferred on the class. *Id.* at 16; *see also In re Baby Products Antitrust Litig.*, 708 F.3d 163, 179 n.13 (3d Cir. 2013).

## V. CLASS COUNSEL HAVE EXHIBITED A LACK OF INTEGRITY CALLING INTO QUESTION THEIR ADEQUACY TO REPRESENT THE CLASS

### A. Plaintiff has made a false and irrelevant *ad hominem* attack on Mr. Kassiotis's counsel

Plaintiff and his counsel have chosen to make an *ad hominem* attack on Mr. Kassiotis and his counsel, presuming that their motivations must be suspect and urging that the Court should be biased against the objection. Referring to Objector's counsel as a "professional objector," Plaintiff suggests that Mr. Kassiotis's objections should be disregarded merely because his counsel has appeared in other class action settlements and represented class members who object to proposed settlements.

Plaintiff cites cases referring to objectors with bad motivations filing generic objections, not pertinent to the case, with the intent to extract nuisance payments from the parties. *MFA* at 15. But Objector's counsel was not involved in any of those cases. That some other lawyers filed generic objections in some other case does not bear on the settlement here, and Mr. Kassiotis's arguments here are hardly generic or canned. The objection specifically addresses the settlement and the evidence and arguments offered in support of it, in light of applicable law.

With regard to cases cited by Plaintiff in which Objector's counsel actually participated, Plaintiff's attack goes further into outright falsehood. Plaintiff says of Objector's counsel, John Davis, that the California Court of Appeal had found that "Davis engaged in questionable conduct in the prior class actions." Plaintiff further states that Objector's counsel "has a history of compromising the interests of unnamed parties to benefit himself and his counsel," and has engaged in "unsavory" litigation tactics. *MFA* at 15, n.12. In support of the foregoing, Plaintiff

9

cites the unpublished opinion *Davis v. Apple Computer, Inc.*, 2005 WL 1926621 (Cal. Ct. App. 2005).[4]

Plaintiff's assertions are false. In that case, Mr. Davis was the plaintiff against Apple Computer concerning a warranty issue, and was not acting as counsel. The issue on appeal was whether Mr. Davis could serve as the plaintiff in a representative case; the trial court found that he could and the appellate court affirmed. *Id.* at *12-13. The trial court found that Davis had *not* engaged in "unsavory litigation tactics," and the appellate court saw "no reason to disturb" that finding, despite defendant's contentions to the contrary. *Id.* at *12. Plaintiff's "questionable conduct" quote, which refers to Mr. Davis's earlier dismissal of a class action regarding the same causes of action, was discussed solely in relation to his ability to serve as a representative plaintiff, and was rejected as a reason for reversal. *Id.* at *12-*13.

Moreover, careful reading reveals that most of Plaintiff's quotation is not to a holding or even *dicta* of the appellate court, but instead to the arguments of counsel in the case. But the trial court rejected the defendant's factual and legal contentions, and the appellate court expressly affirmed. *Id.* at *12. Plaintiff's unctuous attempt to frame these remarks as approved or adopted by the court is not only directly contrary to the express holding, it strongly suggests that Plaintiff's false description of the case is not the result of mere incompetence, but of a willful attempt to deceive this Court.

In actuality, Mr. Davis is experienced in class litigation and has played a beneficial role in numerous class action cases on behalf of individual class members. *See, e.g., In re Visa*

---

[4] The opinion is expressly not-for-publication. It is improper for a party to cite unpublished California opinions, and courts may not rely upon them as authority. Cal. R. 8.1115. *Jimeno v. Mobil Oil Corp.*, 66 F.3d 1514, n.8 (9th Cir. 1995); *In re Ryan*, 310 F. App'x. 980, 983 n.2 (9th Cir. 2009) (criticizing party for reliance on unpublished portion of published California Court of Appeal opinion in violation Cal. R. 8.1115(a)).

10

*Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 524 (E.D.N.Y. 2003) (reducing class counsel's requested fees, thereby increasing the value of the common fund). He has convinced trial courts to deny final approval on numerous occasions.[5] He has prevailed on discrete issues taken up through motion practice.[6] His efforts have led to unilateral or negotiated changes in the settlement ultimately submitted to the courts, and he has prevailed on appeal.[7] Indeed, in one of the cases cited by Plaintiff in an attempt to malign Objector's counsel, *Faught v. Am. Home Shield Corp.*, 444 F. App'x 445, 446 (11th Cir. 2011), the District Court actually praised Mr. Davis for his contribution in representing objectors to a nationwide class action. The Honorable R. David Proctor stated, "The court was very impressed with Mr. Davis and fully appreciates both his candor and advocacy." *Faught v. Am. Home Shield Corp.,* N.D. AL no. 2:07-CV-1928, Doc. 105 at ECF 36.

Plaintiff's attacks on Objector's counsel are not only incompetent and false, they are made for the improper purpose of asserting that the Court should be biased against Objector's arguments because of the reputation of the lawyer representing him. Courts are bound to determine issues by applying applicable law to admissible evidence. They are prohibited from deciding them on the basis of a litigant's counsel's notoriety or reputation. Code of Judicial Ethics Canon 3B (5)-(7) (requiring courts to decide cases on the merits, without improper bias).

---

[5] *See, e.g., Schlesinger v. Ticketmaster*, Los Angeles Sup. Ct. No. BC304565 (Sept. 26, 2012) (final approval denied on the basis of overbroad release); *Edelson v. American Home Shield of California, Inc.*, San Diego Sup. Ct. No. 37-2007-00071725 (final approval denied); *Wilson v. Direct Buy*, D. Conn. No. 3:09-cv-00590 (final approval denied).

[6] *See, e.g., Foos v. Ann Taylor*, S.D. Cal. No. 11-cv-2794, Doc. 71 (successful *ex parte* motion for disclosure of claims rate); *Davis v. Cole Haan*, N.D. Cal. No. 11-01826, Doc. 90 (attorneys' fees to be calculated under CAFA rather than terms of settlement agreement).

[7] *See, e.g., Johns, et. al. v. Visa U.S.A.*, No. CGC-03-004335 (San Francisco Sup. Ct.), decided on appeal *sub. nom. Credit/Debit Tying Cases v. Visa U.S.A. Inc*. (Cal.App. 2012); *Guerra v. San Diego Gas & Electric Co.*, 2015 WL241219.

The Eighth Circuit has found the use of "personal, unsubstantiated attacks on the character and ethics of opposing counsel to be 'highly improper.'" *U.S. v. Holmes*, 413 F.3d 770, 775-776 (8th Cir. 2005). In the headlong drive to convey the false impression that Objector's counsel is of low reputation, motives, and character, Plaintiff's counsel have themselves forged far into sanctionable territory. *Coats v. Pierre*, 890 F.2d 728, 734 (5th Cir. 1989), *cert. denied*, 498 U.S. 821 (1990) (abusive language toward opposing counsel in court documents constitutes a form of harassment prohibited by Rule 11); *accord Redd v. Fisher Controls*, 147 F.R.D. 128, 132-33 (W.D. Tex. 1993); *Thomas v. Tenneco Packaging Co., Inc.*, 293 F.3d 1306, 1320-22 (11th Cir. 2002) (finding of bad faith warranted where attorney included patently offensive remarks directed to opposing counsel in court filings); *Cassim v. Allstate Ins. Co.*, 33 Cal.4th 780, 795-796 (2004) (it is misconduct to "make personally insulting or derogatory remarks directed at opposing counsel or impugn counsel's motives or character."); *Tunnel v. Powell*, 219 F.Supp.2d 230, 243 (N.D. Cal. 2002) (advising that "[C]ounsel should ensure, prior to engaging in such *ad hominem* attacks, that the evidence supports her assertions.").

It is plainly not in the interests of the class for class counsel to stomp out dissent by overbearing tactics. In *In re Classmates.com Consol. Litig.*, 2012 WL 3854501 at *9-11 (W.D. Wa. 2012), the district court reduced class counsel's fees as a sanction for aggressive behavior towards objector and his counsel. Holding that "[t]he court cannot permit class counsel's egregious attack," the court reduced the fee by $100,000 "as a sanction" but also noted that it "would have reduced class counsel's fees by at least that much to reflect conduct that was plainly not in the interests of the class."

12

## B. Class Counsel's Conduct Calls into Question Their Adequacy to Continue Representing the Class

Finally, in the event the Court declines to approve the proposed settlement, class counsel's approach to final approval might well give this Court reason to revisit the question of adequacy of counsel. Their attack on Objector's counsel was procedurally improper and factually false, involving outright mischaracterizations, for the overtly improper purpose of inviting the Court to bias in its determination. This demonstrates incompetence in the most basic elements of legal work, as well as impaired professional ethics. Counsel's actions are inconsistent with counsel charged with fidelity to the class and this Court.

The need to examine adequacy of counsel is particularly apparent where class counsel have not only demonstrated practical incompetence, but also a lack of ethical integrity. *See Creative Montessori Learning Centers v. Ashford Gear, LLC*, 662 F.3d 913, 918 (7th Cir. 2011) ("When class counsel have demonstrated a lack of integrity, a court can have no confidence that they will act as conscientious fiduciaries of the class."); *Reliable Money Order, Inc. v. McKnight Sales Co., Inc.*, 704 F.3d 489, 498-99 (7th Cir. 2013) (even where unethical conduct is not prejudicial to the class, it "nevertheless raises a 'serious doubt' about the adequacy of class counsel when the misconduct jeopardizes the court's ability to reach a just and proper outcome in the case."); *see also id.* at 501.

The faults in class counsel's representation are serious, in that they both prejudice the class and seek to impair this Court's ability to reach a just and proper outcome in the case. *See, e.g., Epstein v. MCA, Inc.*, 126 F.3d 1235, 1255 (9th Cir. 1997) (counsel had provided "not merely inadequate'" but in fact "hostile representation that served the interests of counsel in getting a fee, but did not serve the interests of the [class members] in getting a settlement based

upon a thorough and fair assessment of their . . . claims."), quoted with approval, *Epstein v. MCA, Inc.*, 179 F.3d 641, 650 (9th Cir. 1997) (Wiggins, J., concurring).

## VI.  CONCLUSION

For the foregoing reasons, Objector respectfully requests that the Court deny approval of the Settlement Agreement as proposed.

DATED:  April 2, 2015  Respectfully submitted,

    s/ John W. Davis

John W. Davis (200113CA)
Law Office of John W. Davis
501 W. Broadway, Suite 800
San Diego, CA  92101
Telephone: (619) 400-4870
Facsimile: (619) 342-7170
john@johnwdavis.com

Counsel for Objector Glenn Kassiotis

# CERTIFICATE OF SERVICE

## CASE NO.: 4:13-cv-01411-SNLJ

I hereby certify that on April 2, 2015, I filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day either by Notice of Electronic Filing generated by CM/ECF or by U.S. mail on all counsel of record and unrepresented parties entitled to receive service.

Date: April 2, 2015

                                        s/ John W. Davis
                                        John W. Davis