UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| RONALD LEES, on behalf of himself and others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | No. 4:13CV1411 SNLJ |
| ANTHEM INSURANCE COMPANIES INC., d/b/a ANTHEM BLUE CROSS BLUE SHIELD, | ) ) ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

The Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. ("TCPA") prohibits making automated telephone calls to cellular telephones without the "prior express consent" of the recipient. Plaintiff alleges that defendant Anthem Insurance Companies, Inc., d/b/a Anthem Blue Cross Blue Shield ("Anthem") violated the TCPA when it made such calls to plaintiff and approximately 830,000 other consumers nationwide. Anthem denies any wrongdoing. The parties engaged in settlement discussions and reached a settlement agreement. This Court preliminarily approved the agreement, which calls for a maximum settlement benefit of $6,250,000 and a minimum Settlement Benefit of $4,750,000 for the Class. Plaintiff has moved for final approval of the Settlement (#59) and for the award of attorneys' fees and a service award to the class representative (#50). The motion has been fully briefed, and objections have been filed by two class members. A hearing was held on April 9, 2015, and it was attended by counsel for plaintiff, counsel for defendant, and counsel for objector Glenn Kassiotis.

1

**I.     Legal Standard**

Federal Rule of Civil Procedure 23(e)(2) permits approval of a class action settlement only after determining that it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). "In making that determination a district court should consider (1) the merits of the plaintiff's case weighed against the terms of the settlement, (2) the defendant's financial condition, (3) the complexity and expense of further litigation, and (4) the amount of opposition to the settlement." *In re Uponor, Inc., F1807 Plumbing Fittings Products Liab. Litig.*, 716 F.3d 1057, 1063 (8th Cir. 2013) (internal quotation to *Van Horn v. Trickey,* 840 F.2d 604, 607 (8th Cir.1988) omitted). A settlement agreement is "presumptively valid." *Little Rock Sch. Dist. v. Pulaski Cnty. Special Sch. Dist. No. 1,* 921 F.2d 1371, 1391 (8th Cir.1990), *cited in In re Uponor*, 716 F.3d at 1063.

**II.    The Settlement**

The class members are limited to the 830,593 specific cellular telephone numbers that were called by Anthem or its agent. Those phone numbers were determined by an independent company that analyzed the records of all telephone calls that defendant's agent, Alta Resources, Inc. ("Alta") made on behalf of defendant Anthem. The Settlement Claims Administrator, Kurtzman Carson Consultants LLC ("KCC") reviewed Anthem's records and conducted research yielding 1,029,790 names and addresses associated with those unique cellular telephone numbers (*e.g.*, multiple addresses may have been linked to a given phone number). KCC ran that data against the National Change of Address Database for increased accuracy and then mailed the court-approved Notice to each of the identified addresses. Mailings returned as undeliverable were sent to any forwarding address. The individual notice effort is estimated to have reached 94.5% of the Settlement Class.

Class members were able to submit claim forms through a Settlement Website containing additional information regarding the litigation and settlement. KCC also used the internet to effectuate notification through publication with online banner advertisements linking to the Website.

KCC received a total of 8,139 valid claim forms by the deadline of January 11, 2015. An additional 233 claim forms were deemed to have been filed late, and 13 more were unsigned and thus deemed potentially invalid.

## III. Discussion

At the outset, the Court notes that "a settlement that is the product of arm's-length negotiations conducted by experienced counsel is presumed to be fair and reasonable." *Grove v. Principal Mut. Life Ins. Co.*, 200 F.R.D. 434, 445 (S.D. Iowa 2001) (citing *See Manual for Complex Litigation* (3d ed.1997) § 30.42). Here, the negotiations appear to have been at arm's-length, and counsel is experienced and knowledgeable with respect to class actions. The Court finds that four fairness factors support approval of this class action settlement. As discussed below, however, the Court will not completely grant the plaintiff's requests.

### A. Fairness Factors

First, the merits of plaintiff's case is commensurate with the terms of settlement. The settlement fund is $4.75 million. Each Class Member submitting a valid claim form may receive a pro rata share of the fund up to $500, which is the amount available in statutory damages per violation under the TCPA. Each Class Member's share is determined based on the amount remaining after administration costs, attorneys' fees and costs, and incentive award are deducted. The settlement fund would increase to up to $6,250,000 to the extent the pro rata share was less than $36. Under the current terms of

3

the agreement and in light of the costs and fees suggested by plaintiffs, only the $4.75 million fund was necessary, and each class member stands to gain approximately $200. In addition, Anthem will take steps to reduce the chance that cellular telephone owners may in the future receive a call made on Anthem's behalf from an automatic telephone dialing system without prior consent.

Second, the $200 pay-out to Class Members is sizable considering that the maximum statutory recovery, per-violation, is $500. In addition, and with respect to the factor going to the complexity and expense of further litigation, the outcome of this case at trial is far from certain. In particular, prosecution of this case would involve competing interpretations of whether individuals "consented" to receiving calls from Anthem on their cell phones and defining "automatic telephone dialing system." In addition, Anthem has raised multiple affirmative defenses going to agency and consent, and plaintiff would have to prove vicarious liability. Considering the risks inherent to litigation, including unfavorable outcomes at trial and the possibility of appeal of any judgment, the terms of settlement appear fair and reasonable.

Third, the parties do not address the defendant's financial condition as a factor. Certainly, Anthem appears financially able to mount a defense. *See Grove v. Principal Mut. Life Ins. Co.*, 200 F.R.D. 434, 446 (S.D. Iowa 2001).

Fourth, the amount of opposition to the settlement has been vocal, but small in absolute numbers. Of the more than 800,000 potential class members, only 22 have requested exclusions, and there have been only two objections. One objector, Anthony Brookman, specifically objects to the $36 minimum payout and the disproportional share requested by the class representative. The other objector, Glenn Kassiotis, appeared by

counsel at the April 9, 2015 hearing and also filed multiple memoranda outlining and arguing his objections.

**B.     Objections**

Objector Kassiotis contends that Anthem has failed to satisfactorily explain its methodology for identifying class members and that the attorneys for the Class failed to conduct adequate discovery on that subject. As described above, Anthem identified 830,593 specific cellular telephone numbers that were called by Anthem or its agent. Those phone numbers were determined by an independent company, and steps were taken to mail notice of the Settlement to the owners of the cell phones attached to those numbers --- notice is estimated to have reached 94.5% of the Settlement Class. The objector complains that the parties conducted inadequate discovery pertaining to the identification of Class Members. The objector does not appear to take issue with the notification of those Class Members. Rather, the objector wants to know more about the call logs consulted as part of the Class Member identification, whether calling was outsourced, whether Anthem did some calling in-house, or whether Anthem used vendors other than Alta. Ultimately, however, the objector does not question that Alta called the 830,593 cell phone numbers that make up the Class. To the extent Anthem (itself or through agents) called other cellular phone numbers, the individuals receiving those calls are not part of the class and are thus not bound by the settlement.

Next, the objector takes issue with the volume of Claims Forms rejected by the administrator. Of 830,593 possible claims, there were 8,139 claims forms accepted, but 2,712 persons submitted claims forms that were rejected because they submitted phone numbers that were not on the list of 830,593 numbers. Thus, 23% of the claims forms submitted were rejected for that reason. Several theories exist as to why such a large

5

number of people made claims based on phone numbers that were not part of the class: (1) individuals may have received such calls on landline numbers, (2) individuals may have mistaken a call from Anthem as having been a call from Alta, or (3) some submissions may have been fraudulent. In view of the total number of claims and the fact that inclusion of the rejected claims would not have moved the recoverable fund above the $4.75 million tier, the Court fails to see why any party would be incentivized to inaccurately evaluate the validity of claims. Again, because the Class is limited to the 830,593 cellular phone numbers that received calls from Anthem, individuals who received calls on other numbers are not part of the Settlement and are thus not bound by it.

Finally, objector opposes the plaintiff's motion for attorney's fees and service award. Plaintiff's attorneys request one third of the $6.25 million fund that was "potentially" available to the Class. Plaintiff's attorneys state they are entitled to one third of the larger fund --- rather than to a fraction of the $4.75 million fund actually employed for calculation of each Class Member's pro rata share --- based on *Boeing Co. v. Van Gemert*, 444 U.S. 472, 480 (1980). The Supreme Court held in *Boeing* that "a litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Id.* at 478. In *Boeing*, the class counsel sought to have their attorneys' fees calculated based on the entire fund and not just on the portion of the fund that had been claimed by class members. *Id.* There, the amount of the fund was set by a court's judgment, however, and not by settlement agreement.

When compared to the $4.75 million fund actually paid out by defendant, the attorneys seek a 44% award. Objector points out that every dollar paid in attorneys' fees

6

is taken from the fund available to class members. The Court is inclined to agree that the $2,083,333.33 award is high. Unlike the *Boeing* case, the parties here had not even engaged in full discovery nor any other extensive litigation at the time settlement was reached --- no disputed motions were filed, and settlement discussions began approximately six months after the case was filed.

Plaintiff's counsel also cites to a case approving attorneys' fees of 26% of the gross fund because "[t]he available settlement funds are an appropriate measure of the benefit accrued by class members, regardless of whether the full measure of that sum is actually claimed." *Ramsey v. Sprint Commc'ns Co., L.P.*, No. 4:11-CV-3211, 2012 WL 6018154, at *4 (D. Neb. Dec. 3, 2012); (#50 at 2). Here, a 26% award of the larger fund is $1.625 million, or 34% of the actual fund available to Class Members. The Court will approve attorneys' fees of $1.625 million.

The named plaintiff in this matter, Ronald Lees, seeks a $10,000 service award. Plaintiff maintains that he was actively involved in the litigation and, among other things, (1) provided information to Class Counsel for the Complaint and other filings; (2) reviewed pleadings and other documents; (3) communicated on a regular basis with Class Counsel and kept informed of progress in the litigation and settlement negotiations; and (4) approved the Settlement. Plaintiff Lees's award would also be subject to a contingency agreement reached with his counsel. In support, he relies on many out-of-district cases awarding higher amounts. *See Benzion v. Vivint, Inc.*, No. 12-61826 (S.D. Fla.) (Dkt. No. 195) (tentatively approving $20,000 incentive award to named plaintiff); *Martin v. Dun & Bradstreet, Inc.*, No. 12-00215 (N.D. Ill. Jan. 16, 2014) (Martin, J.) (Dkt. No. 66) (awarding $20,000 incentive award to named plaintiff); *Hanley v. Fifth Third Bank*, No. 12-01612 (N.D. Ill. Dec. 23, 2013) (Castillo, J.) (Dkt.

7

No. 86) (awarding named plaintiff a $25,000 incentive award); *Desai v. ADT Sec. Servs., Inc.*, No. 11-01925 (N.D. Ill. June 21, 2013) (Bucklo, J.) (Dkt. No. 243) (approving incentive awards of 30,000 each to two named plaintiffs); *CE Design Ltd. v. Cy's Crab House N., Inc.*, No. 07-05456 N.D. Ill. Oct. 27, 2011) (Kennelly, J.) (Dkt. No. 424) ($25,000 incentive award); (#50 at 12 n.1). The Court finds that the $10,000 award to plaintiff Lees is fair and reasonable.

### C. Late-filed and Unsigned Forms

Turning to the 345 Claim Forms that were deemed invalid due to lateness or being unsigned, the Court finds that most of those Forms are in substantial compliance with the Settlement and should join in the Class. First, the Court notes that several claims submitted by U.S. mail were actually postmarked by the January 11 deadline or else lacked a postmark but were received on January 12 --- suggesting that they were indeed mailed by the deadline. The Claim Form stated that the form needed to be "postmarked on or before January 11, 2015." Thus those few Claim Forms are surely valid (*see* #72-4 at p. 8, 12, 16). With respect to the Claim Forms postmarked or received electronically after January 11, 2015, the Court will consider valid all Forms postmarked or received electronically through the Claims website no later than January 18, 2015. A few late-filed forms included explanations as to why they were late or else have postal markings suggesting they were lost in the mail. (#72-4 at 178, #72-5 at 4, 34, 74, 92, 98, 178, 206.) Those will also be deemed valid.

As for the unsigned forms, all of which were filled out in full except for the signature requirement, the Court will deem all valid except for the form that does not include a phone number (#72-6 at 38.)

Accordingly,

IT IS HEREBY ORDERED that plaintiff's Motion for Attorney Fees and Service Award (#50) is GRANTED in part as provided herein.

IT IS FURTHER ORDERED that plaintiff's Motion for Final Approval of Class Action Settlement (#59) is GRANTED as provided herein.

IT IS FINALLY ORDERED that the parties shall submit a revised proposed Final Judgment and Order of Dismissal to the Court consistent with this Memorandum and Order no later than June 24, 2015.

Dated this  10th  day of June, 2015.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE