UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
ST. LOUIS DIVISION

| | |
|---|---|
| RONALD LEES, on behalf of Himself and others similarly situated,<br><br>                    Plaintiff,<br><br>v.<br><br>ANTHEM INSURANCE COMPANIES INC., d/b/a ANTHEM BLUE CROSS BLUE SHIELD,<br><br>                    Defendant. | Case No. 4:13-cv-01411-SNLJ<br><br>**CLASS MEMBER GLENN KASSIOTIS'S MOTION FOR ATTORNEYS' FEES AND SERVICE AWARD**<br><br>**Hon. Stephen N. Limbaugh, Jr.** |

## I. INTRODUCTION

Pursuant to Local Rule 54 – 8.02, class member Glenn J. Kassiotis ("Objector" or "Mr. Kassiotis") asks that this Court affirm the long-standing judicial policy acknowledging the important role that objectors play in ensuring that the class action approval process functions properly. In class actions, objectors' counsel are entitled to an award of reasonable attorneys' fees when they contribute to the adversarial process by providing information and argument that assists a court in analyzing a proposed settlement, or otherwise confer a substantial benefit on the class through their work. *Elliott v. Sperry Rand Corp.*, 680 F.2d 1225, 1227 (8th Cir. 1982) (fee awarded from attorneys' fees fund to named plaintiffs who, representing group of objectors, "contributed to the adversarial nature of the proceedings" by their participation in the settlement hearing); *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1156 (8th Cir. 1999) (objectors' lawyers are entitled to fees when they "demonstrate that their services were of some benefit to the fund or enhanced the adversarial process.").

Here, Objector's participation assisted the Court, the Class, and the class action process in precisely the way envisioned in those cases. The benefits conferred are substantial, meaningful, and are not subject to any genuine dispute. As a proximate result of Objector's participation, the Court increased the common fund available to the class by $458,333.33. This benefit is calculated by subtracting the $1,625,000.00 fee awarded from the $2,083,333.33 in fees originally sought by named plaintiff Ronald Lees ("Plaintiff"). As Objector pointed out, and as this Court recognized, "every dollar paid in attorneys' fees is taken from the fund available to class members." *Memorandum and Order*, Doc. 74 at 6-7. Accordingly, the reduction of class counsel's excessive fee demand resulted in a substantial benefit to the class.

Objector not only assisted the Court in determining a reasonable fee, his arguments about the evidentiary support for the settlement spurred the settling parties to present supplemental evidence for the Court's consideration on final approval. (Dkt. 64-65, 68 at 20:8-13, 71). He then provided further analysis and scrutiny of the viability of that evidence. (Dkt. 73). Additionally, Objector ensured transparency in the process by objecting to and preventing the improper filing of critical documents under seal. (Dkt. 73; *see also, Notice of Electronic Filing,* April 23, 2015, 9:21 a.m. CDT).

These accomplishments are even more substantial considering that class counsel and defendant Anthem Insurance Companies, Inc. ("Anthem") possessed substantial resources and expertise which could not be taken lightly. The results obtained are laudable and are of significant real value to the class. Asking the Class to provide remuneration for services rendered is proper under the circumstances.

Objector's counsel performed efficiently and effectively in obtaining these results, his fee claim is thoroughly documented, and the hourly rate claimed is within the range of rates charged

by attorneys of similar skill and expertise for comparably complex litigation. Accordingly, Objector now requests an award based on a percentage of the class savings of between 16 and 20 percent ($73,333 - $91,666). As articulated below, this amount is supported by substantial authority, and the facts of this case.

## II. FACTUAL AND PROCEDURAL HISTORY

This Court is already well-familiar with the procedural and factual background of this case. Accordingly, Objector recites an abbreviated factual history regarding the relevant objection. The Court granted preliminary approval to the underlying settlement on September 29, 2014. The preliminary approval order set forth a briefing schedule for filings in support of, and opposition to, the proposed settlement. Objector received notice of the proposed settlement in November or December of 2014. In early December, 2014, Objector contacted attorney John W. Davis with questions and concerns regarding the proposed settlement. After conferring with Mr. Kassiotis, Mr. Davis moved to appear *pro hac vice* on December 23, 2014 and concurrently filed an objection to the proposed settlement on behalf of Mr. Kassiotis. On December 24, 2014 – approximately three months prior to moving for final approval, Plaintiff filed his motion for attorneys' fees.

On June 19, 2015, in light of the *cy pres* provision included in the proposed settlement agreement, Objector filed a Notice of Supplemental Authority from the Eighth Circuit Court of Appeals concerning *cy pres* awards. The cited opinion, *Oetting v. Green Jacobson, P.C.*, was entered on January 8, 2015 and clarified the circumstances under which fluid recovery might be appropriate.

On March 26, 2015, Plaintiff filed his motion for final approval which included not only argument in support of the proposed settlement but, unfortunately, an array of baseless *ad*

*hominem* attacks against Objector and his counsel. On April 2, 2015, Objector responded, filing a memorandum in opposition to the motion for final approval.

The Court held a fairness hearing on April 9, 2015 where it considered Mr. Kassiotis's objections concerning *inter alia*: (1) the unusually high claims rejection rate (Dkt. 68 at 9, 17:14-17); (2) the lack of evidence submitted prior to the fairness hearing (Dkt. 68 at 20:1-13); (3) proper application of the proposed *cy pres* component (Dkt. 68, 37:24 – 38:19); and (4) the amount of Plaintiff's fee request (Dkt. 68 at 31:10-18). Objector brought each of these issues to the Court's attention and briefed them prior to the hearing. (Dkt. 52, 55, 60). Indeed, the Court noted at the hearing:

> I kind of appreciate what Mr. Davis has done because he's raised questions in this case that I should be asking in approving the settlement if you were not here. So, you know, I think it's a service to the Court in a way that he's participating this way so that to educate me about the kinds of questions that I need to be asking you all. (Dkt. 68, 32:4-9).

After the fairness hearing, the Court entered a scheduling order regarding further briefing in response to matters discussed at the hearing. (Dkt. 62). In response, Objector filed a supplemental brief and supporting declarations on April 20, 2015. (Dkt. 70). Included with this filing were: (1) Objector's "meet and confer" correspondence dated April 1, 2015 proposing solutions to the unusually high claims rejection rate (Dkt. 70-1); (2) a proposal and cost estimate to audit the claims process by a professional claims administrator (Dkt. 70-3); and declaration describing a similar supplemental claims review process utilized successfully in other class litigation. (Dkt. 70-4).

On April 20, 2015, Plaintiff filed a supplemental memorandum in support of the settlement. (Dkt. 71). Plaintiff also submitted (under seal) a supplemental declaration of the claims administrator concerning rejected claims. (Dkt. 72). On April 22, 2015, Mr. Kassiotis

filed objections to Plaintiff's recently filed evidence. (Dkt. 73). These objections were based on hearsay, lack of foundation, relevance, authentication, unqualified expert opinion, and the lack of an opportunity to cross-examine the declarant. Additionally, Mr. Kassiotis objected to Plaintiff filing the entire declaration under seal, rather than limiting sealed materials to personally identifiable class member data. (Dkt. 73 at 4). On April 23, 2015, Plaintiff's counsel agreed to file the material at issue in the public record. *See Notice of Electronic Filing,* April 23, 2015, 9:21 AM CDT.

The Court entered a Memorandum and Order on June 10, 2015 granting final approval to the proposed settlement. The Order reduced Plaintiff's requested fee by $458,333.33. (Dkt. 74 at 6-7). The Court entered final judgment on June 16, 2015 adopting its findings contained within the June 10, 2015 order.

### III. OBJECTOR'S COUNSEL IS ENTITLED TO AN AWARD OF REASONABLE ATTORNEYS' FEES AND EXPENSES

**A. OBJECTOR AND HIS COUNSEL SHOULD BE COMPENSATED FOR SHARPENING THE DEBATE, CONTRIBUTING TO ADVERSARIAL REVIEW OF THE PROPOSED SETTLEMENT, AND INCREASING THE VALUE OF THE COMMON FUND**

Courts have long recognized that the appearance of competent objectors in class actions is critical to courts' understanding of the settlements brought to them, and to protect the integrity of the class device. *Elliott*, 680 F.2d at 1227; *Bell Atlantic Corp. v. Bolger*, 2 F.3d 1304, 1310 (3d Cir. 1993) (in settlement, courts lose benefits of adversarial process so that "objectors play an important role by giving courts access to information on the settlement's merits."); *In re Cendant Corp. PRIDES Litigation*, 243 F.3d 722, 743 (3d Cir. 2001) (noting objectors' "valuable and important role" in class action settlements) quoting *White v. Auerbach*, 500 F.2d 822, 828 (2d Cir. 1974); *Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1329 (9th Cir. 1999) (objector's attorney made "substantial" contribution "by providing an adversarial context in

which the district court could evaluate the fairness of attorneys' fees"); *Great Neck Capital Appreciation Investment Partnership, L.P. v. PriceWaterhouseCoopers, L.L.P.*, 212 F.R.D. 400 (E.D. Wis. 2002).

Here, as a result of Objector's efforts, class members have received a substantial improvement in settlement benefits including an increase in the value of the common fund, and the benefit of an adversarial review of the proposed settlement to assist the Court in its role as guardian of absent class members. Objector obtained those results despite stiff opposition to his efforts.

Considerable forum-specific research was required in light of the complexity of issues solely attributable to Plaintiff's decision to agree to limit discovery to "confirmatory" data, and his initial decision to refrain from providing sufficient evidence in support of final approval. Additionally, Plaintiff and his counsel went to great lengths in a misguided attempt to discredit objector and his counsel by way of personal attack. (Dkt. 59 at 14-16). This caused Objector's counsel to spend additional time addressing those allegations so that they would not go unanswered and cause a distraction from the relevant issues.

To ensure the participation of competent adversaries in the settlement process, courts award attorneys' fees to counsel who bring these benefits to the class action settlement process. *Elliott*, 680 F.2d at 1227 (fee awarded from attorneys' fees fund to named plaintiffs who, representing a group of objectors, "contributed to the adversarial nature of the proceedings" by their participation in the settlement hearing); *Petrovic*, 200 F.3d at 1156 (objectors' lawyers are entitled to fees when they "demonstrate that their services were of some benefit to the fund or enhanced the adversarial process."); *see also Reynolds v. Beneficial National Bank*, 288 F.3d 277, 288 (7th Cir. 2002) (Posner, J.) (desirable participation of objectors in fairness hearings "is

encouraged by permitting lawyers who contribute materially to the proceeding to obtain a fee."); *Frankenstein v. McCrory Corp.*, 425 F. Supp. 762, 767 (S.D.N.Y 1977) ("The presence of an objector represented by competent counsel transformed the settlement hearing into a truly adversarial proceeding entitling objector to an award of attorneys' fees." ); *Fisher v. Proctor & Gamble Mfg. Co.*, 613 F.2d 527, 547 (5th Cir. 1980) ("objectors were plaintiff class members who performed a valuable service for the class of which they were a part."); *Shaw v. Toshiba America Information Systems, Inc.*, 91 F. Supp. 2d 942, 973-74, (E.D. Texas 2000) (awarding counsel for 14 objectors a $6 million fee for securing settling parties' agreement to 180 day extension in settlement coupon redemption period); *Great Neck Capital*, 212 F.R.D. at 412-13; *Consumer Cause v. Mrs. Gooch's Natural Food Markets, Inc.*, 127 Cal. App. 4th 387, 397-98 (2005)*; County of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1325-27 (2d Cir. 1990); *Howes v. Atkins*, 668 F. Supp. 1021, 1027 (E.D. Ky. 1987).

The nature of Objector's participation, and the results obtained, are squarely in line with these authorities, and uniformly support the fee requested here.

B. **THE COURT SHOULD UTILIZE THE PERCENTAGE OF THE FUND METHOD IN DETERMINING A REASONABLE FEE FOR OBJECTOR'S COUNSEL**

In calculating reasonable fees, courts in this Circuit have the discretion to utilize either the "percentage of the recovery" or "lodestar" method*. In re BankAmerica Corp. Sec. Litig.*, 228 F. Supp.2d 1061, 1064 (E.D. Mo. 2002) *citing Johnston v. Comerica Mortgage Corp*., 83 F.3d 241, 245 (8th Cir. 1996)*.* The "common fund" doctrine applies where, as here, litigation results in the recovery of a certain and calculable fund on behalf of a group of beneficiaries*. See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("[A] lawyer who recovers a common fund . . . is entitled to a reasonable attorney's fee from the fund as a whole….")

In his motion for attorneys' fees, Plaintiff argued that the percentage of the fund method

7

should be used to calculate Class Counsel's fees in this case. In support of this argument, Plaintiff cited *In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 170 (S.D.N.Y. 1989) expressing favor for the percentage method, which avoids the "largely judgmental and time-wasting computations of lodestars and multipliers." (Dkt. 50 at 3-4). Ultimately this Court agreed, awarding Class Counsel 26% of the common fund for Plaintiff's fee award without reference to a lodestar/multiplier calculation. (Dkt. 74 at 7).

Accordingly, Objector's fees should be determined the same way. Federal courts award attorneys' fees under the common fund doctrine as a matter of federal common law, based on "the historic equity jurisdiction of the federal courts." *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 164 (1939). Counsel whose arguments contribute to an increase in the common fund available to the class, *e.g.*, by a reduction in the attorneys' fees, are entitled to be compensated using the same equitable considerations as are applied to class counsel. *Rodriguez v. Disner*, 688 F.3d 645, 658 (9th Cir. 2012) ("*Rodriguez II*") (when objections "result in an increase to the common fund, the objectors may claim entitlement to fees on the same equitable principles as class counsel.") citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051-52 (9th Cir. 2002); *Eubank v. Pella Corp.*, 753 F.3d 718, 720 (7th Cir. 2014) (observing that "if a settlement more favorable to the class is negotiated and approved, the objectors will receive a cash award that can be substantial.") citing *In re Trans Union Corp. Privacy Litig.*, 629 F.3d 741 (7th Cir. 2011) (directing increased fee award allocation to objecting attorney for helping to increase common fund, despite "inherent uncertainties" in estimating her relative contribution to the increase).

In light of the law of the case, the law of this Circuit, and common law principles of equity, the Court should utilize the same method in awarding a fee to Objector's counsel by reference to the additional funds made available to the class as a result of Objector's argument

regarding Plaintiff's fee allocation. There is authority for using the incremental increase in the fund as the basis for a percentage award, which courts use as the benefit conferred for the purpose of setting fees under the common fund doctrine. *In re Trans Union*, 629 F.3d at 748; *Consolidated Edison Co. Of New York v. Bodman*, 445 F.3d 438, 460 (D.C. Cir. 2006) (reversing denial of fees to an attorney who did not represent a certified class and directing that "[P]ayment should be allowed "as a reasonable proportion of the amount actually collected ... for which petitioners' attorneys were responsible").

Given these facts and authorities, Objector's counsel requests a fee award measured as between 16 and 20 percent of the reduction in class counsel's fee. The chart below outlines the proposed fee range including effective risk multipliers based on counsel's lodestar of $49,440.00 as of June 15, 2015. *See Declaration of John W. Davis in Support of Class Member Glenn Kassiotis's Motion for Attorneys' Fees and Service Award* ("*Davis Decl.*"). at ¶ 8.

| Percentage of Increase in Common Fund | Dollar Amount | Effective Risk Multiplier |
|---|---|---|
| 16 | $73,333 | 1.48 |
| 17 | $77,916 | 1.57 |
| 18 | $82,499 | 1.6 |
| 19 | $87,083 | 1.76 |
| 20 | $91,666 | 1.8 |

Objector has provided a range, rather than a specific number, so that this Court may exercise its discretion to set the fee in light of its own assessment of Objector's counsel's contribution to the case. The Court will note that the requested percentage range is less than the percentage actually awarded to Class Counsel (26%). The lower percentage request reflects the anticipated argument that Class Counsel invested more time, and therefore had more billable time at risk, in creating the class fund than Kassiotis's counsel did in preserving a portion of that fund for the benefit of the Class and otherwise assisting the Court.

Nevertheless, the risks inherent in prosecuting an objection to a class action settlement are very high, and should be recognized in a fee award. Particular risks far outstrip those faced by attorneys who prosecute typical contingent cases. A settlement that has been given preliminary approval and for which notice has issued has enormous inertia. There is, with few exceptions, a strong presumption in favor of approval of proposed settlements; the settlement usually has not only the strong support of the principal litigants and their sophisticated counsel, but also the favor of the trial court ruling on final approval. *Great Neck Capital*, 212 F.R.D. at 412. Consequently, settlements are approved unchanged in the vast majority of cases in which there are objections. Christopher R. Leslie, *The Significance of Silence: Collective Action Problems and Class Action Settlements*, 59 Fla. L. Rev. 71, 105 (2007) ("Courts have approved proposed settlements in over 90% of the cases in which class members filed objections."). At the same time, filing and prosecuting competent objections is costly, relative to the potential benefit to any individual class member. Leslie, 59 Fla. L. Rev. at 97-101.

Despite facing multiple adverse parties and presumptions, a successful objection typically requires the analysis of numerous case documents and the production of argument within a very short window of time, typically with no assistance from the proponents of the settlement. *See* Edward Brunet, *Class Action Objectors: Extortionist Free Riders or Fairness Guarantors*, 2003 U. Chi. Legal F. 403, 448 (2003) (objectors' counsel "have little time to collect their own information, formulate a coherent position, and formally object to the court."); *see also, City of Oakland v. Oakland Raiders*, 203 Cal. App. 3d 78, 82 (1988) (multiplier took into consideration urgent time demands on prevailing lawyers).

Worse, even objectors who are unquestionably successful in convincing a trial court to reject a settlement entirely may well find themselves uncompensated. *See generally* Brunet, *supra* at 462 (noting that objectors are unlikely to be compensated for "major victories" in which they "defeat a proposed settlement so thoroughly that the settlement is never revived.").[1] On the other hand, trial courts are sometimes too reluctant to acknowledge the genuine contributions of objectors, even where the objectors have in fact provided beneficial adversarial analysis. *See, e.g.*, *Reynolds*, *supra.,* 288 F.3d at 288-289 (observing that district court could not deny fees to objectors on the ground that the court had already privately considered the arguments they later advanced); *Rodriquez v. West*, 563 F. 3d 948, 963 (9th Cir. 2009) (error to deny fees to objectors' counsel: district court clearly erred in concluding that its decision to order the forfeiture of lead counsel's fee award on ethical grounds was based on its "own analysis," rather than objectors' legal and factual arguments).

Objecting to a class action settlement before a court requires knowledge and skills beyond those possessed by most lawyers not experienced in class action litigation, much less lay people. Leslie, *supra* at 97-98; *see also generally* Brunet, *supra*, (arguing for formal policies that would encourage qualified lawyers to advise courts and act as external guardians of settlement fairness). Unfortunately, among lawyers who prosecute class actions and who therefore possess the type of experience required to object effectively, the prosecution of settlement objections is unpopular. Leslie, *supra*, 59 Fla. L. Rev. at 98-99; Brunet, *supra*, 2003 U. Chi. Legal F. at 411 ("[O]bjectors may be the least popular litigation participants in the history of civil procedure.") Courts have recognized that a multiplier is appropriate to

---

[1] *See also e.g.*, *Consumer Cause v. Mrs. Gooch's Natural Food Markets, Inc.*, 127 Cal. App. 4th 387 (2005) (where plaintiff voluntarily dismissed case after objector defeated settlement approval and class certification, there was no source of payment of fees for successful objector's counsel).

compensate the "sacrifice" made by lawyers who undertake professionally undesirable causes that are unpopular and which therefore impose unusual hardships upon them in the prosecution of those causes - not the least of which is difficulty prevailing. *See e.g.* Richard A. Pearl, California Attorney Fee Awards §13.9 at 393.

In light of the foregoing, Objector's requested percentage of 16-20% of the additional benefit conferred on the Class is reasonable.

**C.  OBJECTOR'S REQUESTED FEE RANGE IS REASONABLE REGARDLESS OF THE METHOD USED TO CALCULATE IT**

Objector's counsel's requested percentage of the fund is also supported by the lodestar/multiplier cross-check method, by which a court analyzes a proposed percentage award by expressing it as a lodestar award (the hours expended and the attorneys' hourly rate) with any difference assumed to serve as the contingent risk multiplier. *See, e.g., In re BankAmerica Corp. Sec. Litig.,* 228 F. Supp. 2d 1061, 1066 (E.D. Mo. 2002) (cross check showed that awarding 18% of $490 million settlement would result in a reasonable multiplier of three).

As set forth in the Declaration of John W. Davis filed herewith, Objector's counsel spent a total of 82.4 hours on this case as of June 15, 2015. These hours do not include time spent preparing this motion for fees, the supporting declaration, or related tasks. Multiplying this time by the current hourly rate for Mr. Davis ($600 per hour) results in a total lodestar of $49,440.00. *Davis Decl.* at ¶ 8. This hourly rate is reasonable given the experience and skill of counsel involved, and is within the range of the rates charged by lawyers of similar skill and experience in the field according to the Laffey Matrix attached to the Declaration of John W. Davis as Exhibit A.[2]

---

[2] The Laffey Matrix is a "widely recognized compilation of attorney and paralegal rate data" that is "regularly prepared and updated by the Civil Division of the United States Attorney's Office for the District of Columbia and used in fee shifting cases, among others." *See In re Chiron*

An upward adjustment to the basic lodestar is appropriate in this case, in which all of the work has been done on a contingent basis with no guarantee that counsel would ever receive compensation for his time and effort.[3] Here, an award of between 16% and 20% of the increased return to the Class results in a multiplier between 1.48 and 1.8, well under the typical multipliers routinely approved in class actions. *See e.g. Wiles v. Southwestern Bill Tel. Co.*, 2011 U.S. Dist. LEXIS 64163, 10-12 (W.D. Mo. June 9, 2011) (finding "a 2.3 multiplier ... well within reason for class action litigation.").

Another way of assessing the reasonableness of the fee request is to compare it to the amount awarded to class counsel in the case. *See, e.g., Great Neck Capital*, 212 F.R.D. at 412-13 (awarding objector 5% of class counsel's fee). Here, the fee awarded to class counsel was $1,625,000. Objector's counsel's fee request ranges between just 4.5 and 5.6 percent of that figure. Meanwhile, the amount added to the available fund is approximately 9.6% of the total fund.

**D.  THE COURT HAS THE DISCRETION TO ORDER PAYMENT EITHER FROM THE CLASS FUND, CLASS COUNSEL, OR BOTH.**

A fundamental precept of common fund fee theory is that fees are equitably borne by those who benefit. However, equitable considerations in class actions permit courts to draw, in

---

*Corp. Sec. Litig.*, 2007 U.S. Dist. LEXIS 91140, 18-19 (N.D. Cal. Nov. 30, 2007). The Laffey Matrix is not only recognized as relevant evidence of attorney billing rates by district courts in California, where Objector's counsel regularly practices, but also by district courts in the State of Missouri as well. *See White v. McKinley*, 2009 U.S. Dist. LEXIS 24921, 18-19 (W.D. Mo. Mar. 26, 2009) ("White cites to the 'Laffey Matrix' - a chart created by the United States Attorney's Office for the District of Columbia .... The rates suggested in White's motion fall comfortably within those suggested by his supporting evidence.").

[3] A multiplier serves very important public policy objectives, as it is intended to "reward [contingency] attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases[,]" and "provides the 'necessary incentive' for attorneys to bring actions to protect individual rights and to enforce public policies." *See Fischel v. Equitable Life Assur. Soc'y of the United States*, 307 F.3d 997, 1008 (9th Cir. 2002).

whole or in part, from the funds being paid over to class counsel. *Duhaime v. John Hancock Mut. Life Ins. Co.*, 2 F.Supp.2d 175, 176 (D. Mass. 1998) (ordering objector's counsel paid from class counsel's fee fund; because objector had "shared with class counsel the work of producing a beneficial settlement" the Court found it "appropriate that they also share in the fund awarded to recognize the cost of producing the benefit to the class.") citing *In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 820 (3d Cir. 1995); *see also Shaw*, 91 F. Supp. 2d 942, 973-74, (E.D. Texas 2000) (ordering fee to be paid jointly by class counsel and defendant, as they may agree); followed, *Great Neck Capital*, 212 F.R.D. at 412-13. That is particularly true to the extent that class counsel's efforts were devoted to unproductive *ad hominem* attacks on Objector's counsel – those efforts did not serve the Class or the Court. *See, e.g., Bauer v. Yellen*, 375 Fed. Appx. 154, 156-57 (2d Cir. 2010) (vacating fee award and remanding for the district court to "reduce the total fee by deleting amounts incurred in mounting *ad hominem* attacks.")

### E.   A SERVICE AWARD OF $1000 TO CLASS MEMBER GLENN KASSIOTIS IS REASONABLE

Mr. Kassiotis declined to opt-out to pursue his own case against Anthem, opting instead to participate in the settlement process in an attempt to improve the settlement for himself and the entire class. He succeeded. Courts routinely approve service awards to class members for services they provide and the risks they incur during the course of the class action litigation. *See Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 490 (E.D. Cal. 2010). Mr. Kassiotis's requested $1000 service award is within the range of such awards regularly awarded in class litigation, and is reasonable – particularly in light of the $10,000 service award granted to Plaintiff.

## IV. **CONCLUSION**

Objector and his counsel have worked diligently and efficiently in prosecuting this objection. For these efforts, Objector should receive a modest incentive award and his counsel should be awarded a reasonable fee. Objector respectfully requests an award of attorneys' fees between $73,333.00 and $91,666.00 (equal to 16% - 20% of the enhancement to the common fund), a service award of $1000.00, and an award of $1,543.59 in unreimbursed expenses.


DATED: June 30, 2015                                   Respectfully submitted,


   s/ John W. Davis

John W. Davis (200113CA)
Law Office of John W. Davis
501 W. Broadway, Suite 800
San Diego, CA 92101
Telephone: (619) 400-4870
Facsimile: (619) 342-7170
john@johnwdavis.com

Counsel for Objector Glenn Kassiotis

## CERTIFICATE OF SERVICE

### CASE NO.: 4:13-cv-01411-SNLJ

I hereby certify that on June 30, 2015, I filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day either by Notice of Electronic Filing generated by CM/ECF or by U.S. mail on all counsel of record and unrepresented parties entitled to receive service.

Date: June 30, 2015

s/ John W. Davis
John W. Davis
